**Orlando ESTRADA, Petitioner,**

v.

**Stanley WITKOWSKI and T. Travis Medlock, Attorney General of South Carolina, Respondents.**

Civ. A. No. 3:91–2113–3BD.

United States District Court, D. South Carolina, Columbia Division.

March 10, 1993.

T. Travis Medlock, Donald J. Zelenka, Office of the South Carolina Atty. Gen., Columbia, SC, for petitioner.

Joseph W. Gibson, Jr., Miami, FL, Stephen J. Henry, Greenville, SC, for respondents.

GEORGE ROSS ANDERSON, Jr., District Judge.

This matter is before the court for review of the magistrate's Report and Recommendation made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.00 for the District of South Carolina.

The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber,* 423 U.S. 261, 270–71, 96 S.Ct. 549, 554–55, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

This order addresses respondent's motion for summary judgment and to dismiss pursuant to Rule 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure. The petitioner, Orlando V. Estrada, is presently confined at the Perry Correctional Institution of the South Carolina Department of Corrections, having been convicted of trafficking in cocaine, conspiracy, and carrying a firearm. The petitioner asserts that he was deprived of his right to effective assistance of counsel. Specifically, the petitioner contends that his trial counsel was incompetent, failed to engage in any discovery or investigation, failed to preserve issues for appeal, failed to interview or provide witnesses and was "totally unprepared with respect to the investigation and trial of Petitioner's cause, which was conducted in *absentia.*"

## BACKGROUND

The petitioner was indicted and tried for conspiracy to distribute crack cocaine, trafficking cocaine, and carrying a firearm. The

petitioner contends that he failed to appear for his trial at the request of his trial attorney, Charles E. Smith. On December 5, 1988, the petitioner was convicted by a jury on all three charges and subsequently sentenced by the Honorable James E. Moore to twenty-five years and a $100,000 fine for trafficking in cocaine, ten years and a $12,500 fine for the crime of conspiracy, and one year for carrying a pistol. This conviction was not appealed.

On September 19, 1989, the petitioner filed an application for post-conviction relief (PCR)[1]. This application alleged that the petitioner was denied due process and effective assistance of counsel during his trial. On February 15, 1990, South Carolina Circuit Judge Daniel Laney held an evidentiary hearing to determine the merits of the petitioner's claims. The petitioner was present at this hearing and was represented by Stephen Henry, Esquire, of the Greenville County Bar. After hearing the parties' arguments and proffered testimony, Judge Laney entered an order on March 26, 1990 denying the application for PCR in its entirety.

The court concluded *inter alia* that the trial counsel's representation of the petitioner was effective. It is important to note, however, that the court's findings were based, at least in part, on the testimony of the petitioner's trial attorney, Charles E. Smith. Smith appeared as the state's only witness in the PCR hearing.

Following the denial of his PCR application, the Petitioner petitioned the South Carolina Supreme Court for *certiorari* to review the decision of the PCR judge. The petitioner was represented by Joseph W. Gibson, Esquire, of Miami, Florida in his petition. In support of *certiorari*, the petitioner alleged:

1. That the trial court proceeding in the absence of the defendant violated his due process rights;
2. That the defendant's trial counsel was ineffective inasmuch as:

"(a) Counsel was a witness against his client;

(b) Counsel totally failed to prepare for trial;

(c) That the trial performance of the trial counsel fell below the range of competence demanded of attorneys in criminal matters and performed below the wide range of reasonable professional assistance."

The respondents filed their Return on October 18, 1990 contending, among other arguments, that the petitioner's petition for *certiorari* should be dismissed for failure to comply with South Carolina Supreme Court Rule 50(9)(c)(i) requiring the petitioner to file and serve an appendix containing the transcript of the lower court proceedings. Supreme Court Rule 50(9)(c)(i) is now codified as Rule 227(e)(1) of the South Carolina Appellate Court Rules.

On November 13, 1990, the petitioner filed a motion to supplement the record on appeal, requesting that a wiretap recording of an alleged conversation between the petitioner and a cooperating witness/co-defendant be obtained from the Solicitor for Greenville County and made a part of the record on appeal. On November 26, the respondents filed a return to this motion, stating that the petitioner was still not in compliance with Supreme Court Rule 50(9) (S.C.Ap.Ct.R. 227). The return also objected to having the tape made a part of the record when the complete transcript of the lower court proceedings had not yet been filed. On January 10, 1991, the South Carolina Supreme Court denied the petitioner's petition and motion in the following one sentence Order: "The Petition for Writ of Certiorari and Motion to add to the record are denied."

The petitioner subsequently filed this petition for habeas under 28 U.S.C. § 2254 and the respondents filed their return and memorandum of law in support of summary judgment. The respondent's motion was argued before Magistrate Bristow Marchant on October 9, 1992 and a report recommending summary judgment was issued on October 27, 1992.

---

1. Civil action number 89–CP–23–3672.

On December 21, 1992, the petitioner's trial attorney, Charles E. Smith, was disbarred by the South Carolina Supreme Court[2]. Smith's disbarment resulted from twenty-three separate incidents of unethical conduct. These ethical violations included twelve instances of grossly inadequate client representation and twenty-three incidents of flagrant dishonesty.

## DISCUSSION OF LAW

 It is well established that federal courts will not review a question of federal law decided by a state court if that decision relies on a state law ground that is both independent of the federal question and adequate to support the judgment. *Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This general rule applies regardless of whether the state ground is substantive or procedural. *Id.* In addition, this doctrine is applicable to direct federal review of state court judgments and federal review of state prisoners' habeas corpus petitions alike. *Id.*

 The Supreme Court has held that there is a conclusive presumption that no independent and adequate state ground exists when a state decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and ... the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). An omission of a clear expression that a state court decision is based on an adequate and independent state ground does not, in and of itself, create the presumption that the state court's decision was based on the merits of a petitioner's federal claims. *Coleman,* — U.S. at ——, 111 S.Ct. at 2557–58, 115 L.Ed.2d at 660–61. Rather, the decision of the last state court to which the petitioner presented his federal claims must *fairly appear* to rest primarily on, or to be interwoven with, federal law. *Coleman,* — U.S. at ——, 111 S.Ct. at 2557–58, 115 L.Ed.2d at 660. Accordingly, the state supreme court's one sentence opinion denying *certiorari,* does not create a

presumption that the court's decision relied on the merits of the petitioner's habeas claims. In fact, absent other considerations no conclusion can be drawn from such.

 Where, however, as in the instant case, there has been one reasoned state judgment rejecting a federal claim, later unexplained orders that either uphold or reject that judgment are presumed to rest upon the same ground, absent "strong evidence" to the contrary. *Ylst v. Nunnemaker,* — U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Thus, if the earlier PCR opinion "fairly appears" to rest primarily on, or to be interwoven with, federal law and the adequacy and independence of any possible state law ground is not clear from the face of the opinion, this court must presume, absent "strong evidence" to the contrary, that the latest state court's decision was not based on an adequate and independent ground. In short, this court shall presume that there has been no procedural default on the part of the petitioner by failing to file the transcripts of the lower court proceedings.

This approach has been referred to as the "look through" doctrine and it was developed to deal with the reality that unexplained orders in essence say nothing. In other words, "a presumption that gives [unexplained orders] no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play." *Ylst,* — U.S. at ——, 111 S.Ct. at 2595, 115 L.Ed.2d at 717.

 The court which heard the petitioner's application for PCR issued an order on March 26, 1990 denying the application in its entirety. This order expressly stated that petitioner's allegation of the state's violation of his due process rights was denied upon state procedural grounds. Consequently, this court has no jurisdiction to address the petitioner's due process claim because the state court's decision was clearly based upon an adequate and independent state ground. The petitioner's ineffective counsel claim, however, was addressed by the PCR court and its decision "fairly appears" to be inter-

---

2. *In re Smith,* 427 S.E.2d 634 (S.C.Sup.Ct.1992)

(Davis Adv.Sh.No. 1 at 21).

woven with, if not resting primarily on, federal law. In addition, the adequacy and independence of any possible state law ground for the decision is not clear from the face of the opinion. Accordingly, this court presumes that a procedural default has not been invoked by the South Carolina Supreme Court's unexplained denial of *certiorari* with respect to petitioner's allegation of ineffective trial counsel.

■ The next step of the analysis requires a determination of whether there is "strong evidence" to rebut this presumption. The Supreme Court in *Ylst* stated that a plainly evident stale appeal to the court which issued the unexplained order was "strong evidence" of procedural default if that court did not ordinarily waive similar defaults without stating such. —— U.S. at ——, 111 S.Ct. at 2595, 115 L.Ed.2d at 717. The instant case exhibits similarly "strong evidence" of procedural default. The petitioner clearly failed to provide a transcript of the lower court proceeding as required by Supreme Court Rule 50(9) (S.C.Ap.Ct.R. 227) and has offered no evidence that the state Supreme Court ordinarily waives such defects without so stating.

■ Supreme Court Rule 50(9) (S.C.Ap.Ct.R. 227) provides in pertinent part:

(b) **Notice of Appeal and Ordering Transcript.** In the same manner and under the same time limitations as provided for appeals from the Court of Common Pleas in Rules 203 and 206, the petitioner shall serve and file a notice of appeal and shall obtain from the court reporter a transcript of the proceedings of the lower court.

(c) **Service and Filing of Petition and Appendix.** Within thirty (30) days of receipt of the transcript, petitioner shall serve a copy of the Appendix and petition for writ of certiorari on opposing counsel and shall file with the Clerk of the Supreme Court an original plus six (6) copies of the petition, two (2) copies of the Appendix, and proof of service showing the Appendix and petition have been served.

. . . . .

(e) **Content of Appendix.** The Appendix shall contain:

(1) The entire lower court record.

(2) A copy of the final order entered after the post-conviction proceeding.

Sup.Ct.R. 50(9) (S.C.Ap.Ct.R. 227).

The magistrate concluded, and this court agrees, that the statement "transcript of the proceeding of the lower trial court" in the above rule refers to the transcripts of the lower PCR hearing and that of the petitioner's jury trial. The petitioner failed to provide either transcript to the state Supreme Court for its review. By neglecting to submit the required transcripts, the petitioner failed to provide the appellate court any basis to consider either his motion to supplement the record or his appeal. Accordingly, the petitioner clearly failed to comply with the mandated procedures for filing a petition for writ of *certiorari* to the state supreme court and such failure is "strong evidence" of procedural default. Given such "strong evidence," this court concludes that the petitioner's PCR appeal was denied *certiorari* due to procedural default.

This finding, however, does not terminate the court's analysis. Rather, this court must next determine whether there are overriding interests that warrant its interference with the state's disposition of the matter. The United States Supreme Court in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), articulated a "cause and prejudice" approach to aid in this determination. The "cause and prejudice" standard will be met in those cases where cause for the default and actual prejudice is shown *or* where review of a state prisoner's claim is necessary to correct a "fundamental miscarriage of justice." *Id.* at 135, 102 S.Ct. at 1576 (emphasis added).

■ The petitioner has failed to prove cause and actual prejudice. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). An attorney's

**414**

ignorance, inadvertence or poor judgment is not "cause." *See Coleman,* —— U.S. at ——, 111 S.Ct. at 2566, 115 L.Ed.2d at 671.

The petitioner's appellate attorney contends that he did not obtain and file the transcript of the lower court proceedings as required by the Supreme Court Rules because he was allegedly unable to obtain a copy of an audio tape that was not admitted as evidence during the trial. The inability of the petitioner's attorney to copy the audio tape, however, did not prevent him from obtaining and filing the lower court transcripts. If the petitioner's attorney, for some unknown reason, truly believed that the audio tape was an important part of the record, the proper procedure would have been to obtain and file the transcripts while simultaneously filing motions to compel the production of the tape and to supplement the record. By neglecting to submit the required transcripts, the petitioner's attorney failed to provide the appellate court any basis to consider either his motion to supplement the record or petitioner's appeal. Accordingly, the petitioner's attorney clearly failed to comply with the mandated procedures for filing a petition for writ of *certiorari* to the state supreme court and has failed, under controlling law, to establish cause for this noncompliance.

Petitioner's petition for habeas does not contend that he was deprived of effective assistance of counsel during his PCR appeal, rather the petition challenges only the constitutionality of his conviction at trial. Consequently, this court need not address the PCR appeal issue.

■ Having concluded that the procedural default was not the result of cause, it is unnecessary to evaluate whether actual prejudice resulted. Rather, this court must next determine whether review of the petitioner's claim is necessary to correct a "fundamental miscarriage of justice." The Supreme Court has stated that a fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649. This reference to "actual innocence" is distinct from the concept of legal innocence. *Sawyer v. Whitley,*

—— U.S. ——, ——, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269, 280 (1992). In an attempt to explain the "actual innocence" standard applicable to noncapital cases the Court stated the following:

A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime. Such claims are of course regularly made on motions for new trial after conviction in both state and federal courts, and quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions. But in the rare instances it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the law has made a mistake. In the concept of a noncapital case, the concept of "actual innocence" is easy to grasp.

*Id.* at ——, 112 S.Ct. at 2519–20, 120 L.Ed.2d at 280–81.

■ The Court in *Sawyer* specifically distinguished this noncapital standard from the criteria applied in capital cases. In capital cases the "actual innocence" standard is met by clear and convincing evidence establishing that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law. *Id.* at ——, 112 S.Ct. at 2517–18, 120 L.Ed.2d at 278. The Court developed this distinct standard of "actual innocence" for capital cases because federal district judges are typically presented with successive or abusive habeas petitions on the eve of scheduled executions, and have only limited time to determine whether the petitioners have shown that their case falls within the exception. *Id.* at ——, 112 S.Ct. at 2520, 120 L.Ed.2d at 281. In addition, the Court found it difficult to translate the traditional actual innocence standard into the sentencing phase of a trial on a capital offense. *Id.* at ——, 112 S.Ct. at 2519, 120 L.Ed.2d at 280. Consequently, the capital "actual innocence" standard articulated in *Sawyer* established a framework of relatively objective standards designed to cope with the time restraints and bifurcated nature of capital cases.

Because the instant case involves the petitioner's conviction of a noncapital offense, this court will not apply the capital "actual innocence" standard. Rather, this court must determine whether the "State has convicted the wrong person of the crime." The petitioner has failed to brief this issue. Moreover, review of the record indicates that the petitioner has failed to meet this burden.

As a result of the foregoing analysis, this court concludes that it is without jurisdiction to hear the petitioner's habeas petition. The petitioner, however, is not without further recourse. The petitioner's future options are as follows: first, he may seek post-conviction relief from the State for ineffective counsel resulting in the denial of certiorari of his PCR appeal due to procedural default, *see Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (1991); or second, petitioner may seek a new PCR hearing on the ineffectiveness of his trial counsel given the newly developed material facts concerning trial counsel's recurrent incidents of inadequate representations and dishonesty. *See*, S.C.Code Ann. § 17–27–20(a)(4) (Law.Co-op 1985); S.C.Code Ann. § 17–27–90 (Law.Co-op 1985); *Case v. State*, 277 S.C. 474, 289 S.E.2d 413 (1982) ("unique" combination of facts warranted allowing successive application).

IT IS ORDERED that this action be dismissed for lack of jurisdiction.