United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 95-2906

_____

William J.R. Embrey,                    *
                                        *
          Appellant,                    *
                                        *
     v.                                 *    Appeal from the United States
                                        *    District Court for the Western
Greg Hershberger, Warden,               *    District of Missouri.
United States Medical Center for        *
Federal Prisoners,                      *
                                        *
          Appellee.                     *

_____

Submitted:  September 9, 1997

Filed:  December 17, 1997

_____

Before  RICHARD S. ARNOLD, Chief Judge,  and LAY, McMILLIAN, FAGG,
     BOWMAN, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD
     ARNOLD, and MURPHY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     Almost twenty years ago, William J.R. Embrey and an accomplice, both armed,
forced a banker to withdraw $11,000 from his bank, and then fled across a state line
taking the banker along as a hostage.  As a consequence, Mr. Embrey was convicted
of armed bank robbery, in violation of the Federal Bank Robbery Act (FBRA), see 18
U.S.C. § 2113(a), § 2113(d), and of kidnapping, in violation of the Federal Kidnapping

Act, see 18 U.S.C. § 1201(a)(1). He was sentenced to two consecutive twenty-year terms, one for each conviction.

In his petition to the district court,[1] brought under 28 U.S.C. § 2255, Mr. Embrey maintained that his conviction under the Federal Kidnapping Act was illegal because all of his unlawful activities were violations of FBRA, which, he maintains, Congress intended to be a comprehensive statute that provided punishment for what he did to the exclusion of all other possibly applicable federal statutes. Cf. United States v. Gardner, 579 F.2d 474, 476 (8th Cir. 1978) (per curiam). The district court rejected the petition on the merits, and on appeal a panel of our court reversed that judgment. See Embrey v. Hershberger, 106 F.3d 805 (8th Cir. 1997), vacated, 116 F.3d 826 (8th Cir. 1997). Our court voted to take the case en banc and vacated the judgment of the panel. See Embrey v. Hershberger, 116 F.3d 826 (8th Cir. 1997). We now affirm the judgment of the district court.

I.

We decline to express a view on the merits of Mr. Embrey's underlying legal theory, for, whatever its merits, we think that his petition must inevitably fail for other reasons. In the first place, it is not at all clear that, even if Mr. Embrey's theory is correct, he would be entitled to relief under 28 U.S.C. § 2255. That statute, it is true, provides for relief if "the sentence imposed was not authorized by law," but the Supreme Court has held that "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' " United States v. Addonizio, 442 U.S. 178, 185 (1979), quoting Hill v. United States, 368 U.S. 424, 428 (1962). It is true that on direct appeal a court ought to correct a plain forfeited error that causes the conviction or sentencing of a defendant who is actually innocent, see, e.g., United

_____

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

States v. McKinney, 120 F.3d 132, 134 (8th Cir. 1997), but such cases usually, if not always, involve defendants who were innocent in the sense that they did not commit the acts with which they were charged. That is not our case, and, besides, what is a miscarriage of justice on appeal may or may not be one when the same matter is raised as a ground for post-conviction relief.

However that may be, Mr. Embrey has raised the very claim that he raises now on at least three or four other occasions in the appropriate district court, and we have decided it against him on the merits, in addition to having several times previously dismissed his petitions as successive. See the history recounted in Embrey, 106 F.3d at 806-07. Mr. Embrey argues, however, that because he was not eligible for the sentence under the Federal Kidnapping Act, he is "actually innocent" of it, and therefore we should reach the merits of his claim under the doctrine laid down in Sawyer v. Whitley, 505 U.S. 333 (1992). In Sawyer, a capital case, the Court held that a post-conviction court could reach the merits of a petitioner's constitutional claim, even though the petition was successive, if the petitioner could show that he was "innocent of the death penalty," id. at 349, in the sense that new evidence had become available that was sufficiently strong that, in the light of it, it was probable that no reasonable juror would have imposed the death penalty on him. Id. at 336, 348, 350.

But Mr. Embrey's case is unlike Sawyer in a number of significant ways that are fatal to his argument. In the first place, Mr. Embrey's quarrel is not really with his sentence, it is with the fact that he was convicted. There is no legal error in the sentence, because, if he was correctly convicted, the sentence was a perfectly proper one, and Mr. Embrey does not maintain that it was not. More fundamentally, we think that Sawyer, in terms, applies only to the sentencing phase of death cases. The Court noted, for instance, that while the notion of actual innocence " 'does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense,' " id. at 340, quoting Smith v. Murray, 477 U.S. 527, 537 (1986), "[i]n the context of a noncapital case, the concept of 'actual innocence' is easy to grasp."

Sawyer, 505 U.S. at 341.  The Court, moreover, characterized its task as "striv[ing] to construct an analog to the simpler situation represented by the case of a noncapital defendant."  Id.  We believe, with the Tenth Circuit, that the most natural inference to draw from these observations on the Court's part is that in noncapital cases the concept of actual innocence is "easy to grasp," id., because "it simply means the person didn't commit the crime," United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993).

Even if the basic Sawyer principle were available to undermine the validity of convictions in noncapital cases, when one attempts to construct an analog to Sawyer for such cases it becomes perfectly apparent that Mr. Embrey's petition cannot possibly qualify for relief under it.  Mr. Sawyer's claim was that he had new evidence that had not been previously available to him because, he said, of the unconstitutional activities of the government and the constitutionally deficient performance of his defense lawyer.  See Sawyer, 505 U.S. at 347-48.  In our case, by contrast, Mr. Embrey produces no new evidence at all of his "actual innocence," nor does he allege that the error that he wants corrected resulted in that evidence not being introduced at his trial.  In Schlup v. Delo, 513 U.S. 298, 324 (1995), the Court observed that substantial claims of actual innocence would be "extremely rare," because to "be credible, such a claim requires petitioner to support his allegations of constitutional error [in our case, legal error] with new reliable evidence ... that was not presented at trial."

If Mr. Embrey's argument succeeds, these kinds of claims will cease to be "extremely rare," id.  Judge Friendly originally proposed that actual innocence ought to be relevant to the law of post-conviction remedies not as a way of expanding their availability but as a way of constricting it.  See Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142 (1970).  It would be ironic indeed if that proposal were transformed into a fertile mother of actions.  The Supreme Court, moreover, has specifically embraced Judge Friendly's definition of actual innocence, see Kuhlmann v. Wilson, 477 U.S. 436, 454-55 n.17 (1986) (plurality opinion), a definition that presupposed that newly available evidence

-4-

was to be added to evidence originally presented at a petitioner's trial in order to test its probable effects on a fact-finder's conclusion.

Mr. Embrey's claim, at bottom, is simply a legal not a factual one, and the Supreme Court has "emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence." Sawyer, 505 U.S. at 339. A legal claim that a substantive criminal statute has been wrongly applied to facts can, by resort to a rather unsophisticated play on words, always be converted into a complaint that the relevant facts did not support a conviction and that therefore the defendant was "actually innocent." But that proves too much, for then any such claim can be said to be one of actual innocence, effectively undermining the barrier to post-conviction relief that the principle of actual innocence was meant to erect.

There is, in fact, no new evidence, and Mr. Embrey's complaint reduces to an assertion that the trial court got it wrong in convicting and sentencing him under the Federal Kidnapping Act. We are not disposed to hold that in Sawyer the Supreme Court intended to allow petitioners successive collateral attacks on convictions and sentences by resorting to the simple expedient of reasserting an alleged legal error that resulted in a conviction that would not have otherwise occurred, or in a sentence that would not have otherwise been imposed. Sawyer held that actual innocence was a gateway through which a petitioner had to pass before his claims could be considered. Id. But here, Mr. Embrey's argument is circular and he has conflated his gateway and his ultimate legal claim: He has recharacterized his legal claim that he was wrongly convicted and sentenced as an assertion that he is "actually innocent," in an attempt to resuscitate the claim that he was wrongly convicted and sentenced. If he can do that, then every sentence would be subject to an endless number of successive reviews, a result that we are naturally reluctant to attribute to the holding in Sawyer, and unable to locate in any statute or equitable principle, or, indeed, in any consideration of sound common-law policy, to which our attention has been directed.

## II.

For the foregoing reasons, we affirm the district court's judgment dismissing Mr. Embrey's petition.[2]

LAY, Circuit Judge, with whom McMILLIAN, Circuit Judge, joins dissenting.

Today's opinion is, to say the least, highly unusual. In all due respect to my colleagues, the result reached by the majority represents a gross injustice. The question presented is whether the imposition of a twenty-year illegal sentence is immune from collateral attack under 28 U.S.C. § 2244(a) by reason of the petitioner's unsuccessful filing of successive habeas corpus petitions. The majority concludes the illegal sentence is immune from collateral attack because it finds the exception relating to the fundamental miscarriage of justice (ends of justice)[3] is not applicable to evaluate an illegal non-capital sentence. In doing so, the majority opinion contradicts the law of other courts of appeal as well as our own, overrides the adversarial concession of the United States Attorney, and exalts form over substance.

## I.

This case has a peculiar history. In September, 1980, Embrey was convicted in the United States District Court for the Western District of Missouri on charges of armed bank robbery in violation of the Federal Bank Robbery Act (FBRA), 18 U.S.C. §§ 2113(a), (d), and kidnapping in violation of the Federal Kidnapping Act (FKA), 18 U.S.C. § 1201. On September 19, 1980, the district court sentenced Embrey to two

---

[2]Mr. Embrey also makes an argument that his convictions violated his Fifth Amendment right not to be put in jeopardy twice for the same offense, but this claim must fail for the same reasons that his other claim fails.

[3]In McCleskey v. Zant, 499 U.S. 467, 495 (1991), the United States Supreme Court equated the "ends of justice" inquiry with the "fundamental miscarriage of justice" exception.

consecutive twenty-year prison terms. Embrey appealed his conviction but did not argue his sentence was illegal. This court affirmed Embrey's conviction in an unpublished opinion. See United States v. Embrey, 657 F.2d 273 (8th Cir. 1981) (Table).

In 1983, Embrey, acting pro se, filed his first habeas petition in district court. Embrey challenged his sentence pursuant to 28 U.S.C. § 2255. In that initial petition, Embrey argued that his separate and consecutive sentence under § 1201 for kidnapping was illegal. The district court rejected Embrey's petition on the merits, and Embrey appealed. This court dismissed Embrey's appeal as frivolous pursuant to Eighth Circuit Rule 12(a).[4] Thereafter, Embrey filed several other habeas petitions, many of which this court dismissed as frivolous. The Supreme Court has stated an appeal on a matter of law is frivolous where "[none] of the legal points [are] arguable on their merits." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (quoting Anders v. California, 386 U.S. 738, 744 (1967)). However one may characterize Embrey's sentencing argument, it was never frivolous.

On June 23, 1994, while still facing the second consecutive twenty-year sentence, Embrey filed this petition for writ of habeas corpus. The district court construed Embrey's petition as a motion to correct his sentence pursuant to 28 U.S.C. § 2255 ; it later dismissed Embrey's petition. Embrey appealed to this court.

This time, Embrey found a friendly judicial ear. This court's records show that Judge Morris Arnold appointed counsel for Embrey and set up a full briefing schedule. Following oral argument, a divided panel of this court (Judge Morris Arnold, dissenting) noted the government expressly waived any procedural default claim

---

[4]This rule is now Eighth Circuit Rule 47 (a).

regarding Embrey's failure to object to his illegal sentence before the sentencing court.[5] Embrey v. Hershberger, 106 F.3d 805, 807 (8th Cir.), vacated and reh'g en banc granted, 116 F.3d 826, 826-27 (8th Cir. 1997). The majority of the original panel held that although Embrey had filed successive appeals, this court could reach the merits of Embrey's claim because Embrey had met the "ends of justice" test under § 2244(a).[6] See Embrey, 106 F.3d at 808. The panel concluded Embrey was not "eligible" for the twenty-year consecutive sentence under § 1201 since the FBRA fully encompassed Embrey's integrated conduct of kidnapping and bank robbery. Id. at 811.

## II.

Embrey has raised his sentencing argument in prior habeas petitions. The fact that this court deemed Embrey's earlier attacks on his sentence as frivolous does not diminish the effect of the court's prior judgments. Thus, Embrey's current § 2255 petition is successive.[7] Even so, this court can reach the merits of Embrey's

---

[5]During oral argument before the court en banc, the government explained it was not raising procedural default because "cause" could be shown by the failure of Embrey's trial counsel to object to the defendant's consecutive sentence in his original trial.

[6]The amendments to 28 U.S.C. §§ 2244(a) and 2255 resulting from the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) are not retroactive and do not apply to Embrey's claim. See Lindh v. Murphy, ___ U.S. ___, 117 S. Ct. 2059, 2063 (1997). Further, Congress' more restrictive view toward successive habeas petitions, as reflected in certain AEDPA amendments to the habeas statutes, should have no bearing on this court's treatment of Embrey's pre-AEDPA habeas petition.

[7]The majority alleges that Embrey's current habeas petition is successive. "The terms 'successive petition' and 'abuse of the writ' have distinct meanings." Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) (plurality opinion). A successive petition is one which raises grounds identical to those heard and rejected on the merits in a prior petition. Id. (citing Sanders v. United States, 373 U.S. 1, 15-17 (1963)). An abusive petition is one in which a prisoner raises grounds that were available but not relied upon in a prior petition, or otherwise engages in conduct that disentitles the prisoner to the relief sought. Kuhlmann, 477 U.S. at 444 n.6 (citing Sanders, 373 U.S. at 17-

successive claim if the "ends of justice" will be served by such an inquiry. <u>See</u> 28 U.S.C. § 2244(a). It is my strong belief that the ends of justice will and must be served by such an inquiry. It is difficult to comprehend how the majority can determine whether the ends of justice will be served in this case <u>without</u> making an inquiry into the merits of Embrey's illegal sentencing argument. The majority avoids such an inquiry by concluding the "actual innocence" exception will not allow the court to reach Embrey's claim of an illegal sentence.

The majority bases its conclusion on the Supreme Court's decision in <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992). In <u>Sawyer</u>, the Court recognized the difficulty in translating and applying the actual innocence exception to a case challenging a capital sentence. <u>Sawyer</u>, 505 U.S. at 339-40 (citing <u>Smith v. Murray</u>, 477 U.S. 527, 537 (1986)). In applying the exception in that sentencing case, the Court adopted an "eligibility" test. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 323 (1995). The majority refuses to apply this eligibility test to Embrey's case, contending the actual innocence exception does not extend to a case involving a challenge to a <u>non-capital</u> sentence.

The majority misreads <u>Sawyer</u>. The Supreme Court has never ruled the actual innocence exception, articulated as an eligibility test in <u>Sawyer</u>, does not extend to cases involving challenges to non-capital sentences. While it is true <u>Sawyer</u> involved a challenge to a capital sentence, Sawyer's analysis is not expressly restricted to cases involving capital sentences.

_____

19). "The concept of ‹abuse of the writ' is founded on the equitable nature of habeas corpus." <u>Id.</u>

Embrey's very first habeas petition challenged his sentence on the grounds it was imposed in violation of the laws of the United States. Embrey makes the same argument in this petition. Thus, Embrey's petition is not abusive because Embrey did not raise grounds in this petition that were available to him before, but not relied upon by him in his first petition.

Moreover, there exists no valid reason to restrict the Sawyer analysis to cases challenging capital sentences. As the Sawyer Court demonstrated, the eligibility test is a useful solution to a difficult problem. The eligibility test is a more communicative method for determining whether the ends of justice require a court to reach a petitioner's procedurally-barred challenge to a sentence. An individual is either eligible or not eligible to receive a particular sentence. If an individual receives a sentence for which he or she is not eligible, the eligibility test allows a court to reach the sentence and to correct or vacate that sentence.

In its opinion, the majority also fails to recognize that we are interpreting a congressional enactment under § 2244(a). Although the Supreme Court has developed its own guide as to the meaning of the "ends of justice" test, Congress has never limited the ends of justice test to capital cases. Case law governing § 2244 demonstrates that § 2244 applies to both capital and non-capital cases. See, e.g., Schlup v. Delo, 513 U.S. at 324-30 (discussing the miscarriage of justice exception and applying it to the successive petitions of prisoner convicted of capital murder); Sanders v. United States, 373 U.S. at 15-20 (applying ends of justice test to successive petition of prisoner who challenged his non-capital sentence pursuant to § 2255); McCoy v. Norris, No. 97-1068, 1997 WL 600040, at *4 (8th Cir. Oct. 1, 1997) (considering whether miscarriage of justice exception required court to reach merits of claim in non-capital offender's successive habeas corpus petition); Washington v. Delo, 51 F.3d 756, 760-62 (8th Cir. 1995) (discussing the miscarriage of justice exception and analyzing whether exception required court to review successive petitions of prisoner convicted of non-capital offense); Shaw v. Delo, 971 F.2d 181, 185-87 (8th Cir. 1992) (applying miscarriage of justice exception to death row prisoner's successive habeas petition and determining whether refusal to review petition would result in miscarriage of justice); Poyner v. United States Parole Comm'n, 878 F.2d 275, 277 (9th Cir. 1989) (prisoner serving time for aggravated assault did not make showing that the ends of justice required the court to examine arguments made in a successive petition); McDonald v. Blackburn, 806 F.2d 613, 621-23 (5th Cir. 1986) (applying ends of justice test to successive petition

of prisoner convicted of non-capital offense). Cf. George v. Perrill, 62 F.3d 333, 334-35 (10th Cir. 1995) (applying § 2244(a) to prisoner's repetitive challenge to the execution of his non-capital sentence and declining to reach specific issue of whether petition was successive or abusive because prisoner failed to make showing of cause, prejudice, or fundamental miscarriage of justice); Walker v. Lockhart, 763 F.2d 942, 949-60 (8th Cir. 1985) (en banc) (applying ends of justice test to successive petitions of prisoner convicted of murder who was initially sentenced to death, and later sentenced to life imprisonment, and conditionally granting writ of habeas corpus based on evidence that trial judge was biased and state failed to produce exculpatory transcript).

Justice Rutledge observed over 50 years ago:

> The writ should be available whenever there clearly has been a fundamental miscarriage of justice for which no other adequate remedy is presently available. Beside executing its great object, which is the preservation of personal liberty and assurance against its wrongful deprivation, considerations of economy of judicial time and procedures, important as they undoubtedly are, become comparatively insignificant.

Sunal v. Large, 332 U.S. 174, 189 (1947). A year later, the Supreme Court observed in Wade v. Mayo, 334 U.S. 672, 681 (1948), that "prevention of undue restraints on liberty is more important than mechanical and unrealistic administration of the federal courts." In Sanders v. United States, 373 U.S. at 8, the Court observed "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." (emphasis added). Justice Harlan, although dissenting in Sanders, agreed that "loss of liberty and sometimes loss of life . . . are far too great to permit the automatic application of an entire body of technical rules whose primary relevance lies in the area of civil litigation." Sanders, 373 U.S. at 24 (Harlan, J., dissenting). Thus, it has long been recognized that principles of res

judicata are not to be applied where a fundamental miscarriage of justice has taken place. See, e.g., Sanders, 373 U.S. at 8.

I am well aware that since 1963, restrictive rules have been placed upon the use of the Great Writ. These rules seek to avoid abuse of the writ and to further principles of finality. See Sawyer v. Whitley, 505 U.S. at 339 (overcoming procedural bar requires proof of actual innocence); Teague v. Lane, 489 U.S. 288, 316 (1989) (habeas corpus cannot be used to create new rules of constitutional procedure unless those rules would apply prospectively to all defendants on collateral review); Wainwright v. Sykes, 433 U.S. 72, 87 (1977) (claims not raised in state courts may be raised on habeas corpus only upon showing of cause and prejudice); Stone v. Powell, 428 U.S. 465, 494-95 (1976) (Fourth Amendment exclusionary rule claims are not cognizable on habeas corpus if the state court provided defendant opportunity to fully and fairly litigate those claims). Despite these restrictions, both Congress and the Supreme Court have recognized that there should be availability of the writ, despite procedural default or successive petitions, in order to correct a fundamental miscarriage of justice. See 28 U.S.C. § 2244(a); see, e.g., Schlup, 513 U.S. at 320-21 (noting existence and importance of the exception for fundamental miscarriages of justice). Surely no one can claim that requiring an individual to serve a twenty-year illegal sentence is not a miscarriage of justice. The majority does not dispute otherwise. It simply argues that the actual innocence test articulated by the Court in Murray v. Carrier, 477 U.S. 478, 495-96 (1986), and Sawyer, 505 U.S. at 348, is not flexible enough to be used to attack an illegal non-capital sentence. This makes little sense to me.

The majority also urges that the essence of petitioner's claim is that of "legal innocence" since Embrey challenges his conviction under § 1201. Yet, it is obvious that in charging Embrey, the government sought to enhance Embrey's bank robbery sentence by adding a separate charge of kidnapping under § 1201. Further, the district court treated Embrey's petition as one brought pursuant to § 2255 to correct his sentence. (emphasis added). Any challenge to a sentence is a legal one; this is

-12-

especially true where a court sentences an individual without the authority to do so. The legal challenge, however, is not based on any substantive defect in proof or constitutional rule of procedure. The attack simply focuses on the court's lack of power to impose a sentence.

To urge Embrey is raising a claim of "legal innocence" supports the Supreme Court's observation that the actual innocence test is one that does not easily lend itself to a challenge involving the legality of a sentence. See Sawyer, 505 U.S. at 339-40 (citing Smith v. Murray, 477 U.S. at 537). Despite the difficulty in applying the actual innocence exception to challenges involving sentences, this circuit, at least until today, recognized an exception allowing a habeas petitioner to challenge an illegal sentence even where there had been a procedural default. See Pilchak v. Camper, 935 F.2d 145, 148 (8th Cir. 1991). In Pilchak, Judge Beam, writing for this court, applied the actual innocence exception to a non-capital defendant who, although factually guilty of the crime at hand, was "not the proper subject for a sentence of a lifetime of incarceration." Id. at 148. Judge Beam observed:

> It is difficult to conceive of a more "fundamentally unjust," Engle v. Isaac, 456 U.S. 107, 135, 102 S. Ct. 1558, 1576, 71 L. Ed. 2d 783 (1982), situation than we have in this case. Pilchak was entitled to a trial before an unbiased jury while being represented by a competent lawyer, even if we concede that the evidence available to the prosecution may have been sufficient to convict her of drug conspiracy. More to the point in the application of the Murray exception, however, is that Pilchak, in this case, was not the proper subject for a sentence of a lifetime of incarceration. (footnote omitted). In this regard, we again point out that the principal conspirator, McCaw, was sentenced to a term of years, which sentence has resulted in his already having gained his freedom.

Pilchak, 935 F.2d at 148.

At least three other circuits that have considered this question have also held the actual innocence exception is applicable in the context of a challenge to a non-capital sentence. See United States v. Maybeck, 23 F.3d 888, 893 (4th Cir. 1994) (finding no rationale for limiting the actual innocence exception to death cases and holding the exception applies in non-capital sentencing enhancement cases); Mills v. Jordan, 979 F.2d 1273, 1278-79 (7th Cir. 1992) (concluding application of the actual innocence exception to non-capital habitual offender proceedings is consistent with Sawyer v. Whitley); Mobley v. United States, No. Civ. A. 97-650-AM, 1997 WL 440928, at *3 (E.D. Va. Aug. 1, 1997) (holding application of actual innocence exception is not limited to cases involving capital sentencing); see also Hope v. United States, 108 F.3d 119, 120 (7th Cir. 1997) (noting that prior to the AEDPA amendments to § 2255, courts extended the actual innocence exception to sentencing issues in both capital and non-capital cases); Sones v. Hargett, 61 F.3d 410, 418-19 & n.16 (5th Cir. 1995) (assuming arguendo that the actual innocence exception applies to non-capital sentencing cases); Smith v. Collins, 977 F.2d 951, 959 (5th Cir. 1992) (same). But see Reid v. Oklahoma, 101 F.3d 628, 630 (10th Cir. 1996) (holding the actual innocence exception does not apply in cases involving challenges to non-capital sentences); United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993) (same); Estrada v. Witkowski, 816 F. Supp. 408, 415 (D.S.C. 1993) (stating that actual innocence exception will not be applied because petitioner was convicted of a non-capital offense).

The procedural bar the majority now employs, whether it be based upon procedural default (waived by the government), abuse of the writ, or successive petitions, is very surprising in light of the good faith position of the United States in this case. At oral argument, the United States Attorney expressed a view that Embrey should not be barred from raising his claim of an illegal sentence. He said Embrey's attorney should have raised the illegal sentence argument in Embrey's direct appeal and failed to do so. Further, he indicated Embrey never received a complete review of his claim in this court.

-14-

The majority, for whatever reason, has refused to accept the government's concession made at oral argument. It is true this court is not legally bound to accept such a concession. See Jones v. Hildebrant, 432 U.S. 183, 195-96 (1977) (observing the Court "is not bound by concessions of counsel in oral argument as to whether a legal issue is open in this Court"). However, where a claim of an illegal sentence is at issue, the court should examine with great scrutiny the reasons it has rejected the government's good faith concession.

## III.

Because I believe the "ends of justice" exception applies to Embrey, I would reach the merits of his illegal sentence argument. Embrey argues the offenses of bank robbery and associated kidnapping are fully encompassed within the FBRA, and Congress has directed he should be sentenced only under the FBRA.[8] The United

_____

[8]The statute, 18 U.S.C. § 2113, entitled "Bank robbery and incidental crimes," provides in relevant part:

(a)    Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny--

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

.  .  .

(d)    Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life

-15-

States argues it is lawful to go outside the FBRA and obtain an additional conviction and sentence for behavior covered within the FBRA. I reject this argument.

The United States contends that where an offense constitutes a violation of two statutes, separate convictions and cumulative punishments are permissible if each crime requires proof of a fact that the other does not. (Appellee's Brief at 5, citing United States v. Woodward, 469 U.S. 105 (1985) (per curiam), Albernaz v. United States, 450 U.S. 333 (1981), and Blockburger v. United States, 284 U.S. 299 (1932)). The government, applying the Blockburger test, urges Embrey's consecutive sentences were permissible because the convictions were for separate offenses with distinct elements of proof.

In Albernaz, however, the Supreme Court explained that the Blockburger analysis is controlling only where there is no clear indication of contrary legislative intent. Albernaz, 450 U.S. at 336-38. Here, for the reasons discussed infra, it is patent that Congress intended the FBRA to be the comprehensive and exclusive remedial provision for federal bank robbery prosecutions. See United States v. Leek, 665 F.2d 383, 387 (D.C. Cir. 1981). Further, this court has recognized that the FBRA is a comprehensive scheme precluding additional charges under outside statutes for conduct within the FBRA's coverage. United States v. Phillips, 522 F.2d 388, 392 (8th Cir. 1975).

of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

(e)    Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

The United States also asserts that the district court could impose consecutive sentences for the two convictions, citing cases it maintains are analogous. First, the United States cites United States v. Dotson, 546 F.2d 1151, 1153 (5th Cir. 1977), the only reported case with similar facts and convictions, for the proposition that separate convictions and sentences for violation of the FBRA and § 1201 are valid. However, the cursory discussion in Dotson merely points out that Prince v. United States, 352 U.S. 322 (1957), whereby the Supreme Court prohibited the pyramiding of sentences under the FBRA, is not directly controlling; the Dotson court therefore affirmed the concurrent sentences imposed in that case. Dotson, 546 F.2d at 1153. Second, the United States cites three cases from other circuits to support the imposition of consecutive sentences for federal bank robbery and other offenses. However, these cases do not discuss the issue Embrey raises, and more importantly, all impose the second sentence for illegal conduct not then covered by the FBRA. See United States v. Allen, 797 F.2d 1395, 1401-02 (7th Cir. 1986) (bank robbery and possession of a firearm by a felon, explicitly distinguishing Simpson v. United States); United States v. Davis, 573 F.2d 1177, 1181-82 (10th Cir. 1978) (bank robbery and conspiracy); United States v. Welty, 426 F.2d 615, 619 n.15 (3d Cir. 1970) (same).

Moreover, the Supreme Court addressed and rejected an analogous contention in Simpson v. United States, 435 U.S. 6 (1978). In Simpson, the defendants were found guilty of two bank robberies, and of using firearms to commit the robberies, in violation of § 2113 (a), (d), and 18 U.S.C. § 924(c).[9] The sentencing court imposed consecutive sentences on the robbery and firearms counts. The government argued the convictions and consecutive sentences were justified as distinct offenses under the Blockburger test. Id. at 10-11. The Supreme Court held it was not necessary to reach

_____

[9]The version of § 924(c) at issue in Simpson imposed a sentence of one to ten years upon persons who used or carried a firearm during the commission of a felony. This sentence was in addition to any penalty imposed for the commission of the felony. See Simpson, 435 U.S. at 8 n.2.

the constitutional issue, because Congress had not "authorized the imposition of the additional penalty of § 924(c) for commission of bank robbery with firearms already subject to enhanced punishment under § 2113(d)." Id. at 12-13.[10] In addition to the legislative history of § 924(c), the Court relied upon two rules of statutory construction.[11] First, where there is ambiguity concerning the scope of criminal

---

[10]During oral argument, in an attempt to distinguish Simpson and to support its argument that Embrey's consecutive sentence under § 1201 is not illegal, the government cited United States v. Culbert, 435 U.S. 371 (1978). In Culbert, the Supreme Court upheld a single conviction for bank robbery under the Hobbs Act, 18 U.S.C. § 1951. The defendant and his accomplice attempted to extort money from the president of a federally insured bank. The Court upheld the Hobbs Act charge and reversed the lower court's ruling that activity had to be racketeering to be within the scope of the Hobbs Act. Culbert, 435 U.S. at 379-80.

The government argues that because the Supreme Court upheld a single conviction under the Hobbs Act for extortionate conduct involving a bank, this court should allow the imposition of consecutive sentences for bank robbery under the FBRA and FKA. Given the obvious differences between Culbert and this case, Culbert does not support the government's position. Moreover, the committee report accompanying the 1986 amendment to § 2113 of the FBRA, which amends § 2113(a) to expressly cover crimes of extortion directed at federally insured banks, undercuts the Culbert holding. In that report, the committee states its intent to "overrule those cases holding that only the Hobbs Act applies, and those cases holding that both the Hobbs Act and 18 U.S.C. 2113(a) apply, in order to make 18 U.S.C. 2113(a) the exclusive provision for prosecuting bank extortion." Criminal Law and Proc. Tech. Amends. Act of 1986, H.R. Rep. No. 99-797, at 33 (1986) reprinted in 1986 U.S.C.C.A.N. 6138, 6156 (citations omitted).

[11]While these principles of statutory construction may be important in deciding the merits of Embrey's appeal, there is one important difference between Simpson and this case. In Simpson, the government charged the defendant twice, under § 2113(d) and § 924(c), for committing the bank robbery with a firearm. The government sought separate convictions and consecutive sentences for robbing a bank with a firearm, under § 2113(d), and using a firearm in the commission of a felony, under § 924(c). In the present case, while it may have been improper for the district court to convict

-18-

statutes, "doubt will be resolved against turning a single transaction into multiple offenses." Id. at 15 (citations omitted). Second, the Court supported its holding with the parallel theory that where two statutes may apply, the terms of the more specific statute control. Id. at 15.[12]

In United States v. Leek, 665 F.2d 383, 385 (D.C. Cir. 1981), the defendant pled guilty to violating the FBRA, § 2113(a), which penalizes entry with intent to commit robbery, and to violating a District of Columbia statute penalizing assault with a dangerous weapon, which was chargeable under § 2113(d). Applying United States v. Canty, 469 F.2d 114 (D.C. Cir. 1972) (per curiam), the court held it was reversible error to "fragment the robbery and venture outside the federal scheme for a peg on which to hang the aggravated component of the offense." Leek, 665 F.2d at 387; see United States v. Snell, 550 F.2d 515, 517-18 (9th Cir. 1977) (holding the FBRA "provides exclusive federal remedies for offensive conduct fully within its coverage");

_____

Embrey under a statute outside the FBRA for conduct within its coverage, the rationale is slightly different than that in Simpson. In charging Embrey, the government did not use the FBRA and an outside statute to charge him twice for the same act. Rather, the government fragmented the act to obtain convictions and consecutive sentences for armed bank robbery in violation of §§ 2113(a) and (d), and kidnapping in violation of § 1201.

[12]In 1984, Congress expressly overruled Simpson and Busic v. United States, 446 U.S. 398 (1980). Congress concluded that section § 924(c) should provide a mandatory sentence for all persons committing felonies with a firearm, "including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon." S. Rep. No. 98-225, at 313 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3491. The Senate Judiciary Committee Report specifically directed that armed bank robbery should be prosecuted under §§ 2113(a), (d), and § 924(c). Id. Embrey asserts that "[t]his deliberate and pointed language indicates that the all-inclusive bank robbery punishment scheme remains intact unless explicitly overridden by Congress as it did with particularity in the 1984 weapons enhancement provision." (Appellant's Reply Br. at 17-18).

-19-

United States v. Beck, 511 F.2d 997, 1000 (6th Cir. 1975) (citing Canty, and holding the FBRA "was intended to exclusively proscribe conduct within its 'coverage'"). The court emphasized the Blockburger analysis was irrelevant, Leek, 665 F.2d at 388-89, because the second conviction was not authorized by Congress, and therefore was "illegal and in excess of judicial authority." Id. at 390.[13]

The legislative history of the 1986 amendment to the FBRA illustrates Congress' intent to make the FBRA comprehensive with respect to conduct proscribed in its provisions. The Committee Report accompanying the amendment states:

> There is no gap in federal law. Extortionate conduct is prosecutable either under the bank robbery provision or the Hobbs Act, both of which carry the same maximum prison term (20 years). However, clarification as to which should be the applicable statute is desirable.
>
> The Justice Department believes that the natural and appropriate vehicle for prosecuting extortionate activity involving the obtaining of bank monies is 18 U.S.C. 2113(a), rather than the Hobbs Act, which has the purpose of safeguarding the channels of interstate and foreign commerce from the adverse effects of robbery and extortion. The Committee concurs. Accordingly, section 51 amends 18 U.S.C. 2113(a) expressly to cover crimes of extortion directed at federally insured banks. The Committee intends to overrule those cases holding that only the Hobbs

---

[13]The Eighth Circuit has never decided the issue before us. However, this court, at least in dicta, has recognized validity in the argument that one cannot be sentenced for bank robbery under § 2113 and § 1201. In United States v. Roundtree, 527 F.2d 16, 19-20 (8th Cir. 1975), Judge Heaney, writing for the panel, stated that the FBRA "is a comprehensive statute containing special provisions for increased punishment for aggravated offenses. It is intended to cover most of the aggressions that may arise from a bank robbery and provides additional penalties within a single conviction for aggravated offenses." Id. (emphasis added). On another occasion, this court stated that "[i]n drafting § 2113, Congress intended to limit federal bank robbery prosecutions to a single count charging the appropriate level of crime and precluding additional charges for conduct within § 2113's coverage under statutes outside the scheme." Phillips, 522 F.2d at 392 (citing United States v. Canty).

Act applies, and those cases holding that both the Hobbs Act and the 18 U.S.C. 2113(a) apply, in order to make 18 U.S.C. 2113(a) the exclusive provision for prosecuting bank extortion.

Criminal Law and Proc. Tech. Amends. Act of 1986, H.R. Rep. No. 99-797, at 32-33 (1986) reprinted in 1986 U.S.C.C.A.N. 6138, 6155-56.

Finally, as the Leek court found, Prince v. United States, 352 U.S. at 322, and its progeny also support the argument that an additional sentence, based on a separate statute for conduct within the coverage of the FBRA, is illegal. See Leek, 665 F.2d at 387 n.36. As noted above, the Prince Court prohibited the pyramiding of sentences under the FBRA. The Court based this prohibition on the FBRA's legislative history and the principle that multiple punishments will not be imposed without clear congressional authorization. Therefore, defendants can receive only one conviction and one sentence for violation of the several provisions of the FBRA. See United States v. Pietras, 501 F.2d 182, 187-88 (8th Cir. 1974); United States v. Delay, 500 F.2d 1360, 1367 (8th Cir. 1974); Jones v. United States, 396 F.2d 66, 69 (8th Cir. 1968). The same principles that allow only one sentence for violation of the several provisions of the FBRA suggest that additional sentences based on outside statutes, for activity covered under the FBRA, are illegal and beyond judicial authority. Indeed, it would be inconsistent with the Supreme Court's interpretation of the FBRA and its legislative history, prohibiting multiple punishments under the FBRA itself, to allow the imposition of punishments under the FBRA and an outside statute for illegal activity clearly covered under the FBRA, absent congressional direction to the contrary.

It is unfathomable that a federal court lacks the power to vacate an illegal sentence of twenty years because petitioner has, in vain, sought by successive petitions to assert his liberty interest. I cannot believe this is the law. Societal respect for individual liberty requires more. I must, therefore, dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.