UNITED STATES of America

v.

John E. LEEK, Appellant.

No. 80-1750.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 31, 1981.

Decided Sept. 24, 1981.

Leslie J. Girard, Student Counsel, with whom Ellen Sue Shapiro, Washington, D. C. (appointed by this court), was on brief, for appellant.

J. Edward Agee, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before ROBINSON, Chief Judge, WRIGHT, Circuit Judge, and VAN PELT,[*] Senior District Judge.

Opinion for the Court filed by Chief Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

We are called upon to decide whether an accused can be convicted and sentenced under both the Federal Bank Robbery Act[1] and the District of Columbia assault statute[2] for offenses stemming from a single course of criminal conduct.[3] The District Court adjudged John E. Leek, appellant, guilty of entering a federally-insured bank with intent to commit robbery in violation of the Act,[4] and of assault with a dangerous weapon in contravention of the District of Columbia Code,[5] and sentenced him to consecutive terms of imprisonment. Leek challenges both the convictions and the sentences as impermissible pyramiding. We agree.

## I. BACKGROUND

On June 5, 1968, three men, including Leek, entered the main office of the Indus-

---

[*] Of the United States District Court for the District of Nebraska, sitting by designation pursuant to 28 U.S.C. § 294(c) (1976).

[1]. In pertinent part, the Federal Bank Robbery Act provides:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, credit union, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided for said subsection (b) for the taker.

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct. . . .

18 U.S.C. § 2113 (1976).

[2]. "Every person convicted with intent to commit mayhem, or an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than ten years." D.C.Code § 22–502 (1973).

[3]. This is not the first time we have encountered this problem. In *United States v. Canty*, 152 U.S.App.D.C. 103, 469 F.2d 114 (1972), we addressed it in circumstances only slightly different from those presented in the instant case. See Part II–A *infra*.

[4]. 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

[5]. D.C.Code § 22–502 (1973), quoted *supra* note 2.

trial Bank of Washington and held up several of its tellers.[6] Three months later, Leek was indicted on fifteen counts stemming from his part in the affair. Three of the counts were based on the Bank Robbery Act: one of entering a federally-insured bank with intent to commit robbery and two of robbery of such a bank.[7] The remaining twelve counts charged Leek with District of Columbia Code offenses: three of robbery while armed,[8] three of robbery,[9] five of assault with a dangerous weapon,[10] and one of carrying a dangerous weapon.[11] On March 18, 1970, Leek entered pleas of guilty to one count of entry with intent to commit robbery, in violation of the Act,[12] and one count of assault with a dangerous weapon in transgression of the Code.[13] The District Court sentenced him to imprisonment for three to nine years on the federal count and one to three years on the local count, the terms to be served consecutively.[14]

In 1980, Leek filed a motion to vacate the sentences,[15] claiming that conviction and imposition of criminal penalties under both the federal and District of Columbia provisions was statutorily illegal as well as a violation of the Double Jeopardy Clause of the Fifth Amendment.[16] The District Court denied the motion without opinion,[17] and this appeal ensued.

## II. ANALYSIS

More than a decade ago, in *United States v. Canty*,[18] we addressed a question virtually identical to the one now before us, and we believe the instant case is governed by *Canty*. Nevertheless, we take pains to explain the rationale underlying our decision here for two wholesome reasons. First, it is important to make absolutely clear the meaning of *Canty*, since both the Government and the District Court appear to have some doubts as to its significance. Second, it is equally important to set forth our views as to the impact of recent Supreme Court decisions on this area of the law, for unlike the Government we perceive no undermining of the fundamental basis of *Canty*.

### A. United States v. Canty

Charles M. Richardson, an appellant in *Canty*, was convicted of federal bank robbery by force and violence,[19] and of assault with a dangerous weapon under District of Columbia law [20]—offenses contravening the same two statutes under scrutiny in the present litigation.[21] The former carried a possible sentence of twenty years and the latter ten; their combined total of thirty years exceeded by five the maximum sen-

---

6. Notwithstanding, only one robbery was committed within the meaning of the Bank Robbery Act. See *United States v. Canty, supra* note 3, 152 U.S.App.D.C. at 115, 469 F.2d at 126.

7. All four federal counts alleged violations of 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

8. D.C.Code § 22–3202 (1973).

9. D.C.Code § 22–2901 (1973).

10. D.C.Code § 22–502 (1973), quoted *supra* note 2.

11. D.C.Code § 22–3204 (1973).

12. 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

13. D.C.Code § 22–502 (1973), quoted *supra* note 2.

14. *United States v. Leek*, Crim. No. 1596–68 (D.D.C. Mar. 18, 1970). Leek was still serving these terms when, on May 19, 1981, we granted his motion for release pending appeal. *United States v. Leek*, No. 80–1750 (D.C.Cir. May 19, 1981).

15. See 28 U.S.C. § 2255 (1976).

16. Motion to Vacate Sentence, *United States v. Leek*, Crim. No. 1596–68 (D.D.C. filed Apr. 7, 1980).

17. *United States v. Leek, supra* note 14, (order filed June 6, 1980).

18. *Supra* note 3.

19. 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

20. D.C.Code § 22–502 (1973), quoted *supra* note 2.

21. See text *supra* at notes 12-13.

tence allowable under the aggravated robbery provision of the Federal Bank Robbery Act.[22] Richardson actually received consecutive sentences totaling twenty-seven years,[23] and the circumstances suggested that the Government had manipulated the two statutes in order to obtain two felony convictions and sentences aggregating so much. We noted that

> [i]nstead of prosecuting Richardson entirely within the bank robbery scheme, the Government charged him with the lowest tier of robbery in the federal scheme and sought to punish him for assault, or the aggravated portion of the offense, by reaching out to a catch-all provision in the District of Columbia Code. By venturing outside the federal scheme, the prosecution was able to circumvent the scheme's carefully crafted hierarchy of penalties.[24]

The Government argued in *Canty* that the convictions should be upheld because no obstacle to their imposition was posed by *Blockburger v. United States*,[25] wherein the Supreme Court set forth the test that to this day remains the principal litmus for determining when conduct comprising a single transaction may be deemed to violate more than one criminal statute. "[W]here," said the Court, "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact the other does not."[26] We agree with the Government that the *Blockburger* analysis itself presented no bar to multiple punishment, since robbery by force and violence or by intimidation[27] and assault with a dangerous weapon[28] each demanded proof of a fact unnecessary to establishment of the other.[29] We concluded, however, that "even [where] two provisions require different elements of proof, there must still be a determination that Congress intended the provisions to bear separate punishments when applied to a single act or transaction."[30]

Analyzing the federal and the District of Columbia statutory sections pertinent in *Canty*, we found that Congress had recognized a distinction between bank robbery involving an assault with a dangerous weapon and robbery of a bank by force and violence.[31] We made this discovery on examination of the Bank Robbery Act, which establishes a maximum of twenty years of incarceration for robbery by force and violence,[32] while allowing up to twenty-five years of imprisonment for robbery accompanied by an assault with a dangerous weapon.[33] Concluding that this precluded an inference that Congress intended to per-

---

**22.** 18 U.S.C. § 2113(d) (1976), quoted *supra* note !, provides for a maximum sentence of twenty-five years for robbery involving assault with a deadly weapon.

**23.** 152 U.S.App.D.C. at 117, 469 F.2d at 128.

**24.** *Id.* at 116–117, 469 F.2d at 127–128.

**25.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**26.** *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

**27.** 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

**28.** D.C.Code § 22–502 (1973), quoted *supra* note 2.

**29.** 152 U.S.App.D.C. at 116, 469 F.2d at 127.

**30.** *Id.* See also, *e.g., United States v. Spears*, 145 U.S.App.D.C. 284, 449 F.2d 946 (1971);

*Ingram v. United States*, 122 U.S.App.D.C. 334, 353 F.2d 872 (1965). Recent Supreme Court decisions have made it quite clear that *Canty* is correct in viewing congressional intent as the key factor in determining whether separate sentences may be imposed for multiple offenses arising out of a single criminal transaction. See Part II(C) *infra*. One of these cases suggests that the *Blockburger* test should not even be applied until a determination is made that Congress itself did not intend to preclude multiple punishments. See text *infra* at notes 55–58.

**31.** 152 U.S.App.D.C. at 116, 469 F.2d at 127.

**32.** 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

**33.** 18 U.S.C. § 2113(d) (1976), quoted *supra* note 1.

mit conviction and ·sentencing of offenders under both the federal scheme and the District of Columbia assault provision,[34] we held that

> [t]he federal bank robbery statute establishes a comprehensive scheme . . . a continuum running from entry with intent to rob, to robbery by force and violence, to robbery with the aid of a dangerous weapon, to robbery resulting in death or kidnapping . . . increas[ing] the penalty as the offense becomes more aggravated.[35]

Consequently, "punishment . . . for assault with a dangerous weapon in addition to bank robbery by force and violence was, in our view, plain error." [36] We therefore remanded to the District Court to vacate the convictions on the District of Columbia counts and resentence on the others.[37]

### B. The Present Case

The instant appeal poses almost precisely the same questions as *Canty.* Leek was convicted of entering a federally-insured bank with intent to commit robbery, rather than bank robbery by force and violence, but his transgression is also an offense ranked on the lowest tier of the Federal Bank Robbery Act,[38] and his local offense [39] is identical to *Canty's.* Thus, on the basis of *Canty,* we hold that it was error to fragment the robbery and venture outside the federal scheme for a peg on which to hang the aggravated component of the offense. This technique resulted in two separate felony convictions rather than one, and maximum possible terms of incarceration aggregating thirty rather than twenty-five years.

■ We note that Leek was actually sentenced to an aggregate maximum of twelve years in prison [40]—eight years less than he

---

**34.** *United States v. Canty, supra* note 2, 152 U.S.App.D.C. at 116, 469 F.2d at 127.

**35.** *Id.*

**36.** *Id.* at 117, 469 F.2d at 128. Ruling that conviction under the District of Columbia provision was plain error, since the criminal conduct was proscribed by one of the federal provisions, we vacated the assault convictions of appellant Canty, who had not raised the point, as well as those of appellant Richardson, who brought the problem to our attention. *Id.* at 118 n.21, 469 F.2d at 129 n.21.

We found strong support for our *Canty* holding in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), in which "the Supreme Court prohibited the pyramiding of sentences under the federal bank robbery statute." *United States v. Canty, supra* note 2, 152 U.S.App.D.C. at 117, 469 F.2d at 128. *Prince* had been convicted of both unlawful entry with intent to commit robbery and aggravated robbery—under two separate sections of the Federal Bank Robbery Act. 352 U.S. at 324, 329 n.11, 77 S.Ct. at 404, 407, n.11, 1 L.Ed.2d at 371–372 n.11. He received consecutive sentences, the total of which exceeded the maximum punishment possible under either of the two provisions alone. *Id.* at 324, 77 S.Ct. at 404, 1 L.Ed.2d at 372. After an analysis of the legislative history of the Act, the Court found no reason to assume that Congress intended to authorize sentencing under more than one of its provisions. *Id.* at 328, 77 S.Ct. at 407, 1 L.Ed.2d at 374. Adhering to its policy of lenity, see text *infra* at notes 51–52 and note 51 *infra,* the Court declined to "attribut[e] to Congress, in the enactment of criminal statutes, an intention to punish more severely than the language of [the statute] clearly import[ed] in the light of pertinent legislative history." 352 U.S. at 329, 77 S.Ct. at 407, 1 L.Ed.2d at 374–375. Accordingly, the Court remanded the case to the District Court for resentencing. *Id.*

Applying the principles of *Prince* in *Canty,* we observed that, somewhat differently from *Prince,* appellant Richardson had been sentenced under the District of Columbia Code as well as the Federal Bank Robbery Act. We nevertheless concluded that

> the effect of charging one count under the bank robbery scheme and another outside the scheme was effectively the same, that is to say, it permitted the Government to obtain a sentence longer than the maximum authorized under the highest tier of the bank robbery scheme.

*United States v. Canty, supra* note 2, 152 U.S. App.D.C. at 117, 469 F.2d at 128. We note that the doctrine of *Prince* has been applied in a number of other cases as well. See, *e.g., Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); *United States v. Leather,* 271 F.2d 80 (7th Cir. 1959), *cert. denied,* 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960).

**37.** 152 U.S.App.D.C. at 118, 469 F.2d at 129.

**38.** 18 U.S.C. § 2113(a) (1976), quoted *supra* note 1.

**39.** D.C.Code § 22–502 (1973), quoted *supra* note 2.

**40.** See text *supra* at note 14.

could have received for entry with intent to commit robbery, and thirteen years less than the Act's aggravated robbery penalty.[41] But we do not agree with the Government that Leek is not in position to complain. Of course, we cannot be certain that he would have received an equally lengthy sentence had he been convicted under the federal statute alone. But more importantly, Leek has a right to be free of the brand of two felony convictions, for negative consequences may flow from the very fact that his record shows two convictions rather than one. When, as here, judgment could not legally have been entered on both, the accused is entitled to have his record set straight.[42] Consequently, we hold that the conviction and sentencing of Leek for assault with a dangerous weapon atop entry with intent to commit bank robbery was invalid. We remand the case to the District Court with instructions to vacate Leek's assault conviction and sentence.[43]

### C. Intervening Supreme Court Developments

During the eleven years since our decision in Canty, the Supreme Court has issued a number of opinions emphasizing the importance of the Blockburger test [44] in statutory construction related to problems of multiple convictions and penalties. For example, in Albernaz v. United States,[45] the most recent

decision in this area, the Court stressed that Blockburger's formula is "to be used 'to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively.'"[46] The Government would have us believe that the focus on Blockburger in Albernaz and in the Supreme Court precedent upon which Albernaz relies [47] has so undercut our rationale in Canty that a new approach must be taken to the problem confronting us in this case. We do not agree.

As our earlier discussion explains,[48] we believed—and continue to believe—that fragmentation of a single course of conduct to enable use of a local statute to multiply convictions and enhance punishment is impermissible. We reiterate that the Federal Bank Robbery Act is carefully designed, matching maximum penalties with specific offenses. In circumstances such as these, blind adherence to the Blockburger test is not commanded by the Supreme Court, nor is its application the end of the inquiry. The Blockburger analysis is a tool of statutory construction and nothing more; as we said in Canty, congressional intent, as ultimately discerned, is controlling.[49] In Albernaz, the Supreme Court itself acknowledged limits on the Blockburger methodology, observing that "because it serves as a means

**41.** See 28 U.S.C. § 2113(d) (1976), quoted supra note 1.

**42.** See, e.g., Benton v. Maryland, 395 U.S. 784, 787–791, 89 S.Ct. 2056, 2058–2061, 23 L.Ed.2d 707, 711–714 (1969); United States v. Knight, 166 U.S.App.D.C. 21, 28, 509 F.2d 354, 361 (1975); United States v. Canty, supra note 2, 152 U.S.App.D.C. at 115, 469 F.2d at 116; United States v. Spears, supra note 30; United States v. Hooper, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970); Holland v. United States, 384 F.2d 370 (5th Cir. 1967); United States v. Machibroda, 338 F.2d 947, 949 (6th Cir. 1964).

**43.** Because we afford, on statutory grounds, the relief Leek has requested, we need not reach his constitutional objection. We note, however, that the double jeopardy point raised by Leek was addressed in United States v. Knight, supra note 42, 166 U.S.App.D.C. at 28, 509 F.2d at 361 (1975). We also alluded in Knight to a potential equal protection issue arising as a consequence of the dual criminal

jurisdiction of the District Court, see D.C.Code § 11–502 (1973). We had no occasion to resolve the question in Knight, and it is not before us here.

**44.** See text supra at notes 25–26.

**45.** 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

**46.** Id. at 337, 101 S.Ct. at 1141, 67 L.Ed.2d 280, quoting Whalen v. United States, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715, 723 (1980).

**47.** See, e.g., Whalen v. United States, supra note 46; Iannelli v. United States, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).

**48.** See text supra at notes 23–24.

**49.** See text supra at note 30.

of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." [50]

Just as it pointed out *Blockburger's* boundary as a "clear contrary indication," *Albernaz* also recognized that when the legislative history is ambiguous the traditional rule of lenity [51]—the policy "that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended" [52]—is as vital as ever. This was the doctrine applied by the Court in *Prince v. United States*,[53] the seminal case on illegal pyramiding. The *Prince* Court similarly was called upon to analyze the Federal Bank Robbery Act, and in doing so not only did it invoke the principle of lenity, but it specifically stated that the *Blockburger* approach is not "particularly helpful . . . [in] dealing with a unique statute of limited purpose and an inconclusive legislative history" such as the Federal Bank Robbery Act.[54]

The Court more recently reiterated this sentiment in *Simpson v. United States*,[55] where it addressed the issue whether sentences could be imposed under both the aggravated robbery provision of the Federal Bank Robbery Act [56] and a general enhancement provision [57] providing additional penalties for the use of firearms in the course of commission of federal crimes. The Court held that sentence could not be imposed under both statutes. In so doing,

it declined to undertake a *Blockburger* analysis, stating that

[t]he *Blockburger* test has its primary relevance in the double jeopardy context, where it is a guide for determining when two separately defined crimes constitute the "same offense" for double jeopardy purposes. . . . Before an examination is made to determine whether cumulative punishments are constitutionally permissible, it is necessary, following our practice of avoiding constitutional decisions where possible, to determine whether Congress intended to subject the defendant to multiple penalties for the single criminal transaction in which he engaged.[58]

The approach of *Prince* and *Simpson* was again utilized by the Supreme Court last term in *Busic v. United States*,[59] where the Court further amplified its decision in *Simpson*, holding that the enhancement section may not be used at all where the statute defining the felony of which the defendant stands convicted contains its own provision escalating penalties for aggravated forms of the crime.[60] In short, *Blockburger* and its progeny are simply not relevant to the litigation now before us. Consequently, we find no cause to abandon the rationale of *Canty*.

### D. *Additional Considerations*

■ The Government's efforts to persuade us to allow both of Leek's convictions and sentences to stand on alternative

---

50. 450 U.S. at 340, 101 S.Ct. at 1143, 67 L.Ed.2d at 282.

51. See, *e.g.*, 450 U.S. at 342, 101 S.Ct. at 1144, 67 L.Ed.2d at 284; *Prince v. United States, supra* note 36, 352 U.S. at 329, 77 S.Ct. at 407, 1 L.Ed.2d at 374-375.

52. 450 U.S. at 342, 101 S.Ct. at 1144, 67 L.Ed.2d at 284.

53. *Supra* note 51.

54. 352 U.S. at 325 & n.4, 77 S.Ct. at 405 & n.4, 1 L.Ed.2d at 372 & n.4.

55. 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978).

56. 18 U.S.C. § 2113(d) (1976).

57. 18 U.S.C. § 924(c) (1976).

58. 435 U.S. at 11-12, 98 S.Ct. at 912-913, 55 L.Ed.2d at 76. The *Blockburger* analysis, however, has also been used in cases in which a double jeopardy problem was not the pivotal issue. See, *e.g., Albernaz v. United States, supra* note 45. In any event, it is clear that where congressional intent to preclude multiple sentences is discernible from either the statutes in question or their legislative histories, this intent is controlling.

59. 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

60. *Id.* at 411-412, 100 S.Ct. at 1755-1756, 64 L.Ed.2d at 392-393.

grounds may be disposed of in short order. First, we find no principled basis for distinguishing the degree of overlap between the federal and District of Columbia offenses in this case from that we found in *Canty*. The Government urges that assault with a dangerous weapon is much more akin to robbery by force and violence—the federal violation in *Canty*—than to entry with intent to commit robbery, the federal transgression for which Leek was convicted. Whatever the validity of this distinction, we find the argument to be without merit. The thrust of our analysis in *Canty* was not that the federal and District of Columbia crimes overlapped, for we agreed with the Government that "it might be possible to rob a bank 'by force and violence, or intimidation' even without the use of a dangerous weapon." [61] We directed the District Court to vacate the convictions in *Canty* because we found that the Federal Bank Robbery Act itself covered robbery involving an assault with a dangerous weapon,[62] just as it encompasses entry with intent to commit robbery by use of a dangerous weapon.[63] Accordingly, we reaffirm our position that the offense of robbery may not be split into distinct components to defeat the statutory scheme. The "carefully crafted hierarchy of penalties" devised by Congress [64] is to be adhered to, not evaded.

■ We have carefully considered the Government's objection that in the instant case, "unlike in *Canty*, it was partly appellant, not the prosecutor who 'ventur[ed] outside the federal scheme'" by pleading guilty to the two counts upon which he subsequently was convicted and sentenced.[65] But we cannot forget that the Government bears responsibility for the charges on which it secured Leek's indictment, nor can

we under any circumstances allow convictions to stand when they are contrary to the will of Congress. Whatever the plea bargain attracting Leek's agreement, the District Court had no power to convict or impose sentence under the District of Columbia statute. The consent of the accused is irrelevant when dual convictions are illegal and in excess of judicial authority.

For the reasons set forth, we reverse the District Court's order denying Leek's motion, and remand the case with instructions to vacate the conviction resting on the District of Columbia Code and to resentence on the federal conviction.

*So ordered.*

---

**61.** *United States v. Canty, supra* note 2, 152 U.S.App.D.C. at 117, 469 F.2d at 128.

**62.** *Id.* at 116–118, 469 F.2d at 127–129. See note 1 *supra*.

**63.** See note 1 *supra*.

**64.** *United States v. Canty, supra* note 2, 152 U.S.App.D.C. at 117, 469 F.2d at 128. As we noted in *Canty*, "[w]e do not suggest ... that the prosecution is barred from venturing out-

side the federal bank robbery scheme in order to charge offenses beyond the coverage of the scheme." *Id.* at 118, 469 F.2d at 129. Accordingly, we affirmed convictions of carrying unlicensed weapons, violations of D.C.Code § 22–3204 (1973). *Id.*

**65.** Brief for Appellee at 7, quoting *United States v. Canty, supra* note 2, 152 U.S.App.D.C. at 117, 469 F.2d at 128.