UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald Ray BURNETTE,
Defendant–Appellant.

No. 97–6204.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1998.

Decided March 10, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied April 30, 1999.

Perry H. Piper (argued and briefed), Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, Tennessee, for Defendant–Appellant.

Gregg L. Sullivan (argued and briefed), Asst. U.S. Attorney, Office of the U.S. Attorney, Chattanooga, Tennessee, for Plaintiff–Appellee.

Before: BOGGS and MOORE, Circuit Judges; DOWD, District Judge.*

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

## OPINION

DOWD, District Judge.

The appellant stands convicted of one count of the November 15, 1996, robbery of a branch of the AmSouth Bank in Chattanooga, Tennessee (18 U.S.C. § 2113), two counts of kidnapping (18 U.S.C. § 1201), and two counts of using and carrying a firearm during and in relation to the bank robbery and kidnappings (18 U.S.C. §§ 924(c) and 2).

Burnette and his partner and co-defendant, James Travis White, entered the home of Sue Chambers, the branch manager of the bank, in the evening preceding the bank robbery. At gunpoint, they gained control of Mrs. Chambers' husband, David, her 26-year-old son, Christopher, and finally Mrs. Chambers herself as she returned home. Eventually, they separated Mrs. Chambers from her husband and son and held the two hostage to the demands of Burnette and White that, to insure the safe release of her husband and son, Mrs. Chambers must enter the bank the following morning and bring Burnette funds of the bank. Mrs. Chambers complied; with the assistance of a fellow employee, she entered the bank before it opened for business and thereafter delivered to Burnette over $183,000.00 recovered from the bank's vault.

On December 2, 1996, White confessed to the bank robbery and kidnappings. The next day, Burnette was arrested with incriminating items of evidence in his possession.

At trial, White testified as a government witness and implicated Burnette as the other robber. The alibi testimony presented on behalf of Burnette was rejected; he was convicted of all five counts and sentenced to a term of 468 months. He now appeals.[1]

The kidnapping convictions rest on the fact that White, while in control of David and Christopher Chambers during the time that followed their capture and while they were being held hostage to the demand that Mrs. Chambers loot the vault of the AmSouth Bank, drove his captives across state lines, thus creating the federal jurisdictional basis for the two kidnapping charges under 18 U.S.C. § 1201.

Burnette challenges his kidnapping convictions on two fronts. First, he argues that the provisions of 18 U.S.C. § 2113(e) foreclose the separate prosecution for kidnapping because the kidnapping of the Chambers men is covered by the provisions of subsection (e), which provides:

Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, *or forces any person to accompany him without the consent of such person,* shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

(Emphasis added.)

At the close of the government's case, Burnette moved for a dismissal of the kidnapping counts on two grounds. First, he cited the now-vacated opinion of the Eighth Circuit in *Embrey v. Hershberger,* 106 F.3d 805 (8th Cir.1997) for the proposition that the kidnapping conduct was fully integrated into the bank robbery charge.[2] Second, he contended that he was entitled to an acquittal because it was not "reasonably foreseeable" that his partner would transport the Chambers men across state lines. On appeal, Burnette continues to advance the proposition

---

1. Burnette's offense level for the bank robbery was scored at 31, which included four levels for the abduction of Mrs. Chambers. The separate kidnapping convictions of the Chambers men accounted for an additional two levels under the multiple count adjustment, for a total of 33 levels as the adjusted offense level for Counts 1, 2 and 3. The district court rejected the government's motion for an upward adjustment for the psychological trauma inflicted on Mrs. Chambers, but imposed the maximum sentence of 168 months, within the guideline range of 135 to 168 months,

for Counts 1, 2 and 3. The district court then added the consecutive sentences of five years and 20 years for the two violations of 18 U.S.C. § 924(c), for a total sentence of 468 months.

2. *Embrey* was decided on January 31, 1997. Burnette made his argument for dismissal on June 11, 1997; however, perhaps unbeknownst to Burnette, the Eighth Circuit had vacated *Embrey* on June 6, 1997.

that the provisions of § 2113(e) negate the kidnapping convictions because the kidnappings were an integral part of the bank robbery. We disagree. Our analysis follows.

■ The defendant's argument that the kidnapping of the Chambers men, as hostages to the success of the bank robbery, is subsumed in § 2113 is rooted in the existing case law of this Circuit and anchored in the holding of *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), to the effect that only one sentence is permissible for federal bank robbery even though the defendant's conduct may violate more than one subsection of § 2113. *See United States v. Hunter,* 538 F.2d 1239 (6th Cir.1976);[3] *United States v. Moore,* 688 F.2d 433 (6th Cir.1982).[4] Building on that line of cases and the provisions of § 2113(e), the defendant argues that § 2113 with its various subsections constitutes the sole source of punishment for all conduct embraced by any of its subsections, including an act of kidnapping. Before a further exploration of the defendant's argument, we pause to note that the bank robbery statute (§ 2113) and the federal kidnapping statute (§ 1201) each contain an element of the offense that the other does not. The federal kidnapping statute requires that the victim be transported across state lines and the federal bank robbery statute requires the predicate offense of robbery of a federally-insured bank.

We also note that *United States v. Dotson,* 546 F.2d 1151 (5th Cir.1977) found that a conviction for a kidnapping violation of § 1201 involving transportation of a bank robbery victim across state lines was not subsumed in the federal bank robbery provi-

sions of § 2113. After noting the decision of this Circuit in *Hunter, supra,* and the holding in *Prince, supra,* the *Dotson* court held:

> The practice disapproved in *Prince* of pyramiding penalties under the Federal Bank Robbery Act is not at issue here. The kidnapping charge against appellant Dotson is not grounded in the Federal Bank Robbery Act at all but rather in an entirely separate statute which makes it a federal offense to transport a kidnapped person in interstate commerce. 18 U.S.C. § 1201. Intimating no opinion as to the correctness of the Sixth Circuit's result in *Hunter,* we hold simply that the rule of *Prince* against aggregating penalties under the Federal Bank Robbery Act does not preclude imposition of the sentence in the instant case for a kidnapping conviction obtained under a statutory provision outside the Bank Robbery Act.

*Dotson,* 546 F.2d at 1153.

Against that background, the defendant advances the opinion expressed by Judge Lay in a split decision in *Embrey v. Hershberger,* 106 F.3d 805 (8th Cir.1997). The *Embrey* action was brought under the provisions of 28 U.S.C. § 2255. Embrey forced a banker to withdraw monies from his bank and then fled across a state line, taking the banker as a hostage. As in this case, Embrey was successfully prosecuted for violation of both § 2113 and § 1201. Judge Lay's opinion held that the kidnapping conviction was subsumed in the bank robbery. The case was remanded with instructions to the district court to vacate the conviction and sentence under § 1201. The respondent-appellee petitioned for rehearing en banc,

---

**3.** In *Hunter,* three armed men entered the home of the bank manager and held his family hostage to their demand that he withdraw substantial sums of money from the bank in exchange for the safe return of his family members. The bank manager complied and left $32,000 taken from the bank in an open field designated as the drop site. The defendant was convicted of two counts under § 2113 and received concurrent sentences of 35 years for each conviction. On appeal, the Sixth Circuit held that the multiple sentences were incorrect under the teachings of *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

**4.** In *Moore,* the district court imposed consecutive sentences for violations of § 2113(d) and (e). The defendant went to the residence of the bank official and forced the bank official to drive him to the bank and complete the robbery of the bank while a confederate held the members of the bank official's family hostage. After the defendant received the monies of the bank, he departed with the bank official and tied him to a tree. The consecutive sentences were vacated in reliance on *United States v. Hunter, supra.*

which was granted.[5] The en banc court concluded, contrary to the position of the majority in the three-judge panel decision, that Embrey had failed to make a showing of actual innocence that would warrant consideration of the merits of Embrey's successive motion to vacate his sentence, and thus affirmed the judgment of the district court and dismissed the petition for habeas relief. 131 F.3d 739 (8th Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 78, 142 L.Ed.2d 61 (1998). In so ruling, the en banc court, with Judge Lay dissenting, declined to express a view on Embrey's underlying legal theory. *Id.* at 740.

In his lengthy analysis, set forth as the majority opinion for the three-judge panel and again in a dissent from the en banc majority opinion, Judge Lay contended that Congress intended for the Federal Bank Robbery Act to be the comprehensive and exclusive remedial provision for bank robbery prosecution. He cited *United States v. Leek,* 665 F.2d 383 (D.C.Cir.1981) as authority for that proposition. We decline to adopt Judge Lay's reasoning.

In *Leek,* the bank robber charged under § 2113 was also charged and convicted under the District of Columbia Code for assault with a dangerous weapon used during the bank robbery; he was given consecutive sentences. The *Leek* court followed its earlier precedent of *United States v. Canty,* 469 F.2d 114 (D.C.Cir.1972) in holding "that fragmentation of a single course of conduct to enable use of a local statute to multiply convictions and enhance punishment is impermissible. We reiterate that the Federal Bank Robbery Act is carefully designed, matching maximum penalties with specific offenses." *Leek,* 665 F.2d at 388.

The *Leek* court then discounted the *Blockburger* test for application to the case at hand, repeating as indicated in *Canty, supra,* that "congressional intent, as ultimately discerned, is controlling." *Leek,* 665 F.2d at 388.

To make its point based on Supreme Court precedent, the *Leek* court then referred to *Simpson v. United States,* 435 U.S. 6, 11–12, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), which nullified the sentencing application of an earlier version of 18 U.S.C. § 924 that had called for an enhancement of a sentence where a firearm was used in a federal bank robbery setting. The *Simpson* Court opined that the congressional intent demonstrated that the enhancement provisions of § 924 were not intended to apply to prosecutions under the Federal Bank Robbery Act.[6] *Simpson,* 435 U.S. at 12–13, 98 S.Ct. 909.

In his initial opinion in *Embrey,* and after concluding that the decision in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) directed that the *Blockburger* analysis is controlling only where there is no indication of contrary legislative intent, Judge Lay declared: "Here we deem it patent that Congress intended the FBRA to be the comprehensive and exclusive remedial provision for federal bank robbery prosecutions." *Embrey,* 106 F.3d at 810 (citing *Leek,* 665 F.2d at 387).

The *Leek* decision quotes *Canty,* which declared that

> [t]he federal bank robbery statute establishes a comprehensive scheme ... a continuum running from entry with intent to rob, to robbery by force and violence, to robbery with the aid of a dangerous weapon, to robbery resulting in death or kidnapping ... increas[ing] the penalty as the offense becomes more aggravated.

*Leek,* 665 F.2d at 387 (quoting *United States v. Canty,* 469 F.2d 114, 127 (D.C.Cir.1972)).

In his subsequent dissent to the en banc decision in *Embrey,* Judge Lay opined further on his claim that congressional intent with respect to the Federal Bank Robbery Act overrides a *Blockburger* analysis as applied in *Dotson, supra,* as he declared:

> 18 U.S.C. § 924(c) to call for consecutive sentences, beginning at five years, when a firearm was used in connection with a federal bank robbery. *See United States v. Moore,* 917 F.2d 215, 228–30 (6th Cir.1990).

---

**5.** The judgment of the panel was vacated prior to the en banc hearing. 116 F.3d 826 (8th Cir. 1997).

**6.** Reacting to *Simpson* and the subsequent case of *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), Congress amended

The legislative history of the 1986 amendment to the FBRA illustrates Congress' intent to make the FBRA comprehensive with respect to conduct proscribed in its provisions. The Committee Report accompanying the amendment states:

There is no gap in federal law. Extortionate conduct is prosecutable either under the bank robbery provision or the Hobbs Act, both of which carry the same maximum prison term (20 years). However, clarification as to which should be the applicable statute is desirable.

The Justice Department believes that the natural and appropriate vehicle for prosecuting extortionate activity involving the obtaining of bank monies is 18 U.S.C. 2113(a), rather than the Hobbs Act, which has the purpose of safeguarding the channels of interstate and foreign commerce from the adverse effects of robbery and extortion. The Committee concurs. Accordingly, section 51 amends 18 U.S.C. 2113(a) expressly to cover crimes of extortion directed at federally insured banks. The Committee intends to overrule those cases holding that only the Hobbs Act applies, and those cases holding that both the Hobbs Act and the [sic] 18 U.S.C. 2113(a) apply, in order to make 18 U.S.C. 2113(a) the exclusive provision for prosecuting bank extortion.

Criminal Law and Proc. Tech. Amends. Act of 1986, H.R.Rep. No. 99–797, at 32–33 (1986) *reprinted in* 1986 U.S.C.C.A.N. 6138, 6155–56.

*Embrey v. Hershberger,* 131 F.3d 739, 749 (8th Cir.1997) (en banc) (Lay, J., dissenting).

Inherent in the analysis of Judge Lay, upon which the defendant relies, is the proposition that the reference in § 2113(e) to "forc[ing] any person to accompany him without the consent of such person" is the statutory equivalent of the kidnapping of a person that involves transportation across state lines. We fail to see anything in the congressional history that would require such conclusion. Further, different rationales underlie the two statutes. Kidnappings during a bank robbery are bad because they threaten the safety of those unlucky enough to cross the path of bank robbers, while kidnappings that cross state lines are bad because the federal government has an interest in the safety of those who move in interstate commerce. As a consequence, we reject the proposition that the kidnapping convictions are subsumed for sentencing purposes, including the application of the enhancement provisions of 18 U.S.C. § 924(c), into the bank robbery conviction. Put simply, we follow *United States v. Dotson, supra.*

■ Burnette's second challenge to his kidnapping convictions focuses on his contention that the jury instructions should have included a requirement that the government prove that the interstate transportation of the Chambers men by White was "reasonably foreseeable" to Burnette. The district court correctly refused to give the instruction. Interstate transportation of the kidnapping victim is a jurisdictional requirement with respect to a violation charged under 18 U.S.C. § 1201, but the government has no obligation to prove that the defendants purposely engaged in such transportation. *See United States v. Welch,* 10 F.3d 573, 574 (8th Cir.1993). The appellant's argument relies on *Matthews v. United States,* 449 F.2d 985 (D.C.Cir.1971), but that decision pre-dates the 1972 amendment to § 1201. Section 1201 previously punished "[w]hoever knowingly transports [a kidnap victim] in interstate or foreign commerce[.]" Since the 1972 amendment, knowledge of interstate transportation is not an element of the offense: interstate transportation now serves merely as a jurisdictional basis for the federal prosecution of kidnapping.

■ Burnette next claims that it was error for the court to give consecutive sentences for the § 924(c) convictions, resulting in five years for the first conviction and twenty years for the second conviction. The fourth count, charging a § 924(c) violation, used the bank robbery charged in Count One as the predicate offense and the fifth count, charging a § 924(c) violation, cited the kidnapping counts charged in Counts Two and Three as the predicate offenses.

■ Burnette's appellate purpose in attacking the separate kidnapping convictions

is to undermine the consecutive sentence of twenty years imposed for the second § 924(c) conviction.[7] It is now firmly established that the imposition of separate consecutive sentences for multiple § 924(c) violations occurring during the same criminal episode are lawful. *See, e.g., United States v. Casiano,* 113 F.3d 420, 424–26 (3d Cir.1997); *United States v. Floyd,* 81 F.3d 1517, 1526–27 (10th Cir.1996); *United States v. Andrews,* 75 F.3d 552, 557–58 (9th Cir.1996); *United States v. Camps,* 32 F.3d 102, 106–109 (4th Cir.1994). Moreover, the defendant's reliance on *United States v. Johnson,* 25 F.3d 1335 (6th Cir. 1994) (en banc) is misplaced.

In *Johnson,* the defendant was charged and convicted for possession with intent to distribute two controlled substances (cocaine and dilaudid—one count each) discovered simultaneously during the execution of a search warrant at the defendant's residence. He was also charged and convicted in two counts of § 924(c) violations. A fifth count charged him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On the two convictions for possession with intent to distribute and on the felon-in-possession conviction, the defendant was sentenced to 51 months for each, to run concurrently. The sentence on the two § 924(c) convictions was for the mandatory minimum five years per count, consecutive to each other and consecutive to the 51–month sentence imposed on the other three counts.

The *Johnson* court reasoned that, "a sensible construction dictates that possession of one or more firearms in conjunction with predicate offenses involving simultaneous possession of different controlled substances should constitute only one offense under § 924(c)(1)[.]" *Johnson,* 25 F.3d at 1338. Thus, the second § 924(c) conviction and sentence was vacated.

The facts in this case, from the standpoint of the required predicate offenses, more closely mirror *United States v. Nabors,* 901 F.2d 1351, 1358 (6th Cir.1990). In *Nabors,* officers executing a search warrant in a search for narcotics were confronted by the defendant, who shot an ATF agent as entry was attempted. The defendant was charged and convicted of two § 924(c) violations, as the predicate offenses included possession of cocaine with intent to distribute and assault on a federal officer. The consecutive sentences for the § 924(c) violations were affirmed. In our case, the kidnapping occurred significantly before, and independent of, the actual bank robbery, rather than being in any way simultaneous. In sum, the second consecutive sentence of twenty years for Burnette was lawfully imposed.

We find no error in the convictions or the sentence. Judgment AFFIRMED.

---

7. Burnette does not challenge the first consecutive sentence of 5 years arising from his own use of a firearm in connection with the robbery of the bank. Under the Burnette analysis, discount-ing the kidnapping convictions would lead to an adjusted offense level of 31 with a sentencing range of only 108 to 135 months plus a single consecutive sentence of 5 years.