NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0198n.06

No. 25-6101

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 01, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| DERRION TURNER, | ) ) | OPINION |
| Defendant-Appellant. | ) ) ) | |

Before: WHITE, THAPAR, and MATHIS, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant–appellant Derrion Turner appeals his within-guidelines sentence of 246 months of imprisonment, arguing that the sentence was substantively unreasonable because the district court gave too much weight to his juvenile criminal history. Finding no abuse of discretion, we **AFFIRM.**

## I.   BACKGROUND

Over the course of ten days in late August and early September 2023, Turner, then 18-years old, participated in three armed carjackings. The first two were successful. The victim in the third carjacking, however, fought with Turner, took his gun—which discharged during the struggle—and restrained him until officers arrived. Upon questioning at the police station, Turner waived his *Miranda* rights, admitted his involvement in all three carjackings, and revealed the location of one of the stolen cars. None of the victims was physically injured in these incidents.

More than a year later, a grand jury indicted Turner on five counts related to these events. Counts I and II stemmed from the first incident, respectively charging carjacking (18 U.S.C. § 2119(1)) and using a firearm in relation to a crime of violence (18 U.S.C. § 924(c)). Counts III and IV related to the second carjacking, charging the same offenses as counts I and II. And count V stemmed from the third incident, charging attempted carjacking (18 U.S.C. § 2119(1)). Turner pleaded guilty to all five counts. There was no plea agreement.

The United States Probation Office prepared a presentence report (PSR). The PSR reported that although the underlying offenses were Turner's first as an adult, he was involved in criminal conduct as a juvenile. In 2018, when Turner was 13, he and a few others burglarized an elementary school, throwing ice cream around the hallways and taking $ 285 worth of property. Later that year, Turner helped break into vehicles, apparently by "pulling on [their] door handles." R. 35, PID 96. In 2019, Turner was involved in an incident in which a man was struck in the head during an attempted robbery. And in 2021, when Turner was 16, he participated in a string of three carjackings. Turner also brought a weapon to school when he was 10 and got into a fight when he was 11. Turner participated in juvenile intervention programs in his youth, although the record is unclear regarding whether he has spent any time in a custodial setting before this sentence.[1]

Turner has five siblings, including an older brother who was involved in much of Turner's conduct as a juvenile. That brother was later sentenced to 14 years of imprisonment for armed robbery. In 2019, in a "traumatiz[ing]" incident with lingering effects, Turner's father shot and killed Turner's friend, a "cousin" who was "part of the[] family" although not biologically related.

---

[1] Turner's juvenile records indicate that he was to be placed in custody until his nineteenth birthday on January 3, 2024. However, as the district court observed, Turner committed the underlying offenses months before that date, making it impossible for him to have been in custody. Neither the parties nor Probation could explain the inconsistency.

*Id.* at PID 103–04. Turner's mother was also struck by one of the bullets and sustained injuries to her leg. His father was sentenced to 27 years of imprisonment for the offense. Turner was diagnosed with ADHD when he was in elementary or middle school and has had diabetes since he was 7. Turner reported that, in April 2025, he lost consciousness while in custody because his "sugar was low" and was subsequently hospitalized. *Id.* at PID 103. Records indicate that he last attended ninth grade and does not have a high-school diploma. Turner obtained a forklift license and earned money from mowing grass and washing cars. Turner's mother described him as "a follower" who "tr[ied] to fit in." *Id.*

In calculating Turner's guidelines range, the PSR grouped counts I (carjacking), III (carjacking), and V (attempted carjacking) and, after deducting three points for Turner's acceptance of responsibility, calculated an adjusted offense level of 27.[2] Turner had three criminal history points, all arising from his juvenile conduct, resulting in a category II criminal history. Accordingly, the advisory guidelines range on each of those three counts was 78 to 97 months, and the Probation Office recommended that those sentences be served concurrently. Each § 924(c) offense carried a mandatory minimum sentence of 84 months of imprisonment, to be served consecutively to each other and to the sentence on any other count. Thus, Turner faced a mandatory sentence of at least 168 months of imprisonment and a total guidelines range of 246 to 265 months. Neither party objected to these calculations, and the district court adopted them.

Turner argued that such a sentence was greater than necessary to achieve the aims of sentencing, urging the court to follow *Dean v. United States*, 581 U.S. 62, 69 (2017), and instead

---

[2] Because a firearm was discharged during the third incident, the PSR initially added 7 points to Turner's base offense level, making his total offense level 28. Turner objected, arguing that the government would not be able to show by a preponderance of the evidence that Turner fired the gun. But even if that enhancement did not apply, the addendum to the PSR explained that Turner still faced a 6-point increase because a firearm was used during the incident. At the sentencing hearing, the parties agreed and the district court applied a 6-point increase, resulting in a total offense level of 27.

sentence him to the statutory minimum of 14 years for the § 924(c) offenses plus one day for the grouped carjacking counts. Although Turner did not dispute the seriousness of his offenses, he contended that a "departure" or "variance" was still warranted. Turner emphasized his young age and explained that he "gr[ew] up around crime," often influenced by his older brother, who was involved in much of Turner's juvenile conduct. R. 45, PID 173. He described traumatic events— like his father's killing of a close friend—and reasoned that his educational disabilities may have made him especially susceptible to negative influences. Highlighting Turner's prior carjacking offenses and the resulting need for specific deterrence, the government objected to any variance or departure, contending instead that it was appropriate to impose a 246-month guidelines sentence.

The district court agreed with the government. It recognized Turner's "relatively tender" age and his place on "the age-crime curve where cognitive changes affect an individual's behavior and culpability." *Id.* at PID 183–87. Nevertheless, the court stated that Turner "ha[d] committed perhaps more than a full life's measure of crime." *Id.* at PID 183–84. Recounting Turner's criminal history, the court explained that it did so to such an "extent" both because it was relevant to Turner's history and characteristics and because "it establishes by a preponderance of the evidence that he has been and continues to be a danger to himself and the community." *Id.* at PID 185. The court commented that "this history and the record" was also "important in considering the defendant's request for a downward variance and a departure due to the defendant's youthfulness." *Id.* at PID 185–86. Although the court was "sensitive to the impact of adverse childhood experiences as risk factors contributing to involvement in the criminal justice system," it found that Turner's record "demonstrated a lack of respect for himself and the law" and an

"[in]ability to be rehabilitated," making him "likely to recidivate" and a potential "danger to the community." *Id.* The court accordingly imposed a 246-month total sentence.

## II. ANALYSIS

We review for abuse of discretion the substantive reasonableness of a sentence. *United States v. Florence*, 163 F.4th 1017, 1028 (6th Cir. 2026). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 633. (quotation omitted). "Within-guidelines sentences are afforded a 'rebuttable presumption of substantive reasonableness.'" *Florence*, 163 F.4th at 1028 (quoting *United States v. Sears*, 32 F.4th 569, 576 (6th Cir. 2022)).

Under this deferential standard, we find no abuse of discretion. It is true that the court underscored Turner's juvenile criminal history, but it did so in part to explain its decision to reject Turner's request for a downward variance. *See* R. 45, PID 185–86. Moreover, § 3553(a) required the court to consider Turner's "history and characteristics" and the need for the sentence to afford adequate deterrence, making his recidivistic conduct relevant. Under these circumstances, we cannot say that the court gave unreasonable weight to Turner's criminal behavior as a juvenile.

We acknowledge that Turner will remain in prison well into his thirties for crimes he committed as a teenager, when he was likely "more impulsive, risk-seeking, and susceptible to outside influence." U.S.S.G. § 5H1.1 (amended Nov. 1, 2024) (removed from the 2025 guidelines in a "neutral" amendment with no substantive effect on sentencing considerations, U.S.S.G. ch.1,

pt. A, intro. comm. (2025)).  Congress, however, imposed mandatory minimum sentences for § 924(c) offenses, and our case law has allowed the government to stack multiple charges, even where, as here, the underlying incidents occurred within a few days of each other.  *See United States v. Burnette*, 170 F.3d 567, 571–72 (6th Cir. 1999).  Turner is correct that the court could have deemed the mandatory 14-year prison term sufficient, *see Dean*, 581 U.S. at 69, but the court had discretion to conclude otherwise.  "The fact that [an] appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Accordingly, we **AFFIRM.**