Juan GOMEZ, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. CIV. 99–3022, CR 97–30073.

United States District Court,
D. South Dakota,
Central Division.

May 19, 2000.

Juan Gomez, Oxford, WI, pro se.

Ted L. McBride, United States Attorney, by Michelle G. Tapken, Assistant U.S. Attorney, Sioux Falls, SD, for United States.

## ORDER

KORNMANN, District Judge.

The Court having adopted the magistrate's report and recommendation.

IT IS ORDERED that the motion to vacate or set aside conviction and sentence (Doc. 104) is denied.

## ORDER

Juan Gomez, plaintiff, filed a motion (Doc. 104) pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. This Court referred the matter to U.S. Magistrate Judge Mark Moreno pursuant to 28 U.S.C. § 636(b)(2)(B). Judge Moreno caused to be filed on March 27, 2000, his report and recommendations for disposition (Doc. 112). Gomez was specifically warned that failure to file written objections to the report and recommendations for disposition within ten (10) days from the date of service "shall bar an aggrieved party from attacking such Report and Recommendations before the assigned United States District Judge."

Gomez thus was given a very clear warning as to the consequences of failing to file written objections. He obviously received the report and recommendation on or before April 1, 2000, since he refers to it in his docketing statement (Doc. 113) in which he states that his notice of appeal (Doc. 114) to the United States Court of Appeals for the Eighth Circuit (which notice is dated April 3, 1999(sic)) was mailed on April 1, 2000. To the present date, Gomez has filed no objections to the report and recommendation and the time to do so has long since expired.

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Gomez is proceeding *pro se*. According, despite the failure to file objections, the Court has conducted a *de novo* determination of the report of the file. This Court presiding over the Gomez trial, heard all the evidence, and sentenced him. The Court found that Gomez testified falsely at the trial and ordered an enhancement for obstruction of justice. Clearly, there would

have been no basis at all for any downward departure. The entire report and recommendation should be adopted and accepted.

The Court notes that the Court of Appeals has refused to permit the filing of the notice of appeal and docket entries (Doc. 116). This Court must now consider whether to issue a certificate of appealability and should decline to do so as there are no issues which merit any such appeal. Now, therefore,

IT IS ORDERED:

1. The report and recommendation is accepted and adopted *in toto*.

2. No certificate of appealability will issue by this court and Gomez may seek from the Court of Appeals such a certificate.

REPORT AND RECOMMENDATIONS
FOR DISPOSITION

MORENO, United States Magistrate Judge.

I.

The above-captioned 28 U.S.C. § 2255 case was referred to this Court by the District Court[1] pursuant to 28 U.S.C. § 636(b)(1)(B), for purposes of determining defendant, Juan Gomez's (Gomez) eligibility to proceed *in forma pauperis*, conducting any necessary hearings, including evidentiary hearings, and submitting to it proposed findings of fact and recommendations for disposition.

II.

Gomez was charged by indictment with first degree burglary, in violation of 18 U.S.C. § 1152 and SDCL 22–32–1. He was arrested, arraigned and thereafter released pending trial. On December 17, 1997, a jury found Gomez guilty of the burglary charge. The trial court thereafter denied Gomez's post-trial motions and

sentenced him to forty-six months of imprisonment.

Subsequently, Gomez appealed but the Eighth Circuit Court of Appeals affirmed his conviction and sentence. The Eighth Circuit's decision is reported at *United States v. Gomez*, 165 F.3d 650 (8th Cir. 1999).

Approximately eight months later, Gomez filed a motion under § 2255 to vacate, set aside or correct his sentence. The motion was referred to this Court for a report and dispositional recommendations.

III.

During the evening of August 9, 1997 and on into the early morning hours of the following day, Carol Thompson Muniz (Muniz), Kerrie Flute (Flute), Fernando Aranda (Aranda) and Danielle LaRoche (LaRoche) spent time together drinking alcohol at a Reliance, South Dakota bar and at Muniz's house, located on the Lower Brule Indian Reservation. After the bar closed at midnight, the foursome went to a dance in the town of Lower Brule, where they stayed until 2:00 or 3:00 a.m. Once the dance ended, they began drinking again at Muniz's home.

While, sitting in Muniz's kitchen, the group heard someone banging at the front door of the house. Muniz and Aranda yelled at the person to go around to the back door. Gomez, who was the one at the front door, went to the back door and the upon discovering that the door was locked, kicked and pounded on it until it flew open. He then entered the house but before proceeding, broke a beer bottle he was carrying on the kitchen door frame, scattering glass around the kitchen. As he did this, a piece of glass hit LaRoche on the head, causing her to run out of the house.

Flute attempted to flee the house also but Gomez confronted her with the broken beer bottle, brandishing the jagged edge as he approached her. When Gomez turned his attention to Aranda and lunged

---

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

at him, Flute escaped. While inside the house, Gomez looked at Muniz and yelled "Bitch, you're dead," or words to that effect. Gomez and Aranda began to fight and Muniz dashed off to her bedroom. Moments later, she came out and, seeing that the coast was clear, went to a neighbor's house and telephoned the police.

Officer Tim Felicia of the Lower Brule Police Department and a tribal deputy arrived at Muniz's residence at approximately 3:30 a.m., within a few minutes of receiving the call. Felicia noticed that the back door was open and the door frame had been broken, and that there was a broken beer bottle and glass in the entryway of the kitchen, along with blood.

Gomez, who testified in his own defense, gave a markedly different version of what took place at Muniz's house. He testified that he went to the house in search of his girlfriend, Beverly Skunk (Skunk), but only found Aranda. According to Gomez, after he asked if Skunk was around, Aranda, without any provocation, broke a beer bottle over Gomez's face and cut him under his arm with the bottle.

Following Gomez's arrest that same day, Muniz saw Gomez standing nearby. Muniz testified that Gomez yelled at her, threatening to hurt her if she told on him.

The trial lasted two days and the jury, disbelieving Gomez's rendition of what happened, returned a guilty verdict on the burglary charge. The trial court imposed sentencing enhancements to Gomez's base offense level for possession of a dangerous weapon and for obstruction of justice and sentenced him to a forty-six month sentence.

### IV.

Although Gomez has not requested or otherwise sought to have counsel appointed for him, this Court feels compelled to decide whether he is entitled to the appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, in view of the nature of the proceeding, the issues raised and the relief sought.

A court may appoint counsel for a defendant seeking § 2255 relief when "the interests of justice so require." § 3006A(a)(2)(B). If the court conducts an evidentiary hearing, the interests of justice require the court to appoint counsel. Rule 8(c) of the Rules Governing § 2255 Proceedings. If no evidentiary hearing is necessary, the appointment of counsel is discretionary.

In exercising its discretion, a court should first determine whether a *pro se* defendant has presented a non-frivolous claim. *See Abdullah v. Norris,* 18 F.3d 571, 573 (8th Cir.), *cert. denied,* 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). If the defendant has presented only claims that are frivolous or clearly without merit, the court should dismiss the case on the merits without appointed counsel. *Id.;* Rule 4 of the Rules Governing § 2255 Proceedings. If the defendant has presented a non-frivolous claim, the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the defendant and the court to such an extent that "the interests of justice so require" it. *Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir.1995); *Abdullah,* 18 F.3d at 573; § 3006A(a)(2)(B). In determining whether appointment of counsel is required for a defendant seeking § 2255 relief with non-frivolous claims, the court should consider the factual and legal complexities of the case, the defendant's ability to investigate and present claims, the existence of conflicting testimony, and any other relevant factors. *Nachtigall,* 48 F.3d at 1081–82; *Hoggard v. Purkett,* 29 F.3d 469, 471 (8th Cir.1994); *Abdullah,* 18 F.3d at 573.

Applying these factors to the case at hand, this Court concludes that the interests of justice do not require the appointment of counsel. The claims Gomez raises in his motion, while not frivolous or devoid of any colorable merit on their face,

nonetheless, are not ones that involve complex legal or factual issues or ones that arise out of conflicted testimony or require further fact investigation. *Nachtigall,* 48 F.3d at 1082; *Hoggard,* 29 F.3d at 472. It is evident that Gomez understands the issues involved and is capable of presenting his claims and responding to the rejoinder arguments of plaintiff, United States of America (government). *Id.* His motion and accompanying briefs are well-written and contain proper citations to applicable legal authorities so as to enable the Court to determine whether § 2255 relief is warranted. *Nachtigall,* 48 F.3d at 1082. Finally, Gomez's claims can easily be resolved on the basis of the court record. *Hoggard,* 29 F.3d at 472. The Court therefore finds it unnecessary to appoint counsel for Gomez and declines to do so.

## V.

■■■ Gomez requests that this Court grant him an evidentiary hearing on his motion. An evidentiary hearing, however, need not be held (1) if the defendant's allegations, accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible or conclusions rather than statements of fact. *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998) (quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Likewise, an evidentiary hearing is not required "where the files and records of the case conclusively show that the [defendant] is not entitled to relief." *Standing Bear v. United States,* 68 F.3d 271, 272 (8th Cir.1995), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *United States v. Duke,* 50 F.3d 571, 576 (8th Cir.), *cert. denied,* 516 U.S. 885, 116 S.Ct. 224, 133 L.Ed.2d 154 (1995); *see also, Holloway v. United States,* 960 F.2d 1348, 1351 (8th Cir.1992); *United States v. Schmitz,* 887 F.2d 843, 844 (8th Cir.1989) (citations omitted).

Gomez's claims are ones that are capable of resolution from the record. *See Blankenship v. United States,* 159 F.3d 336, 337–39 (8th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999); *Rogers v. United States,* 1 F.3d 697, 699 (8th Cir.1993); *see also, United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Dall v. United States,* 957 F.2d 571, 572 (8th Cir. 1992); *c.f., United States v. Apker,* 174 F.3d 934, 937–41 (8th Cir.1999) (wherein the clarity of the existing record made an evidentiary hearing unnecessary). After close scrutiny of the record, this Court is convinced that Gomez is not entitled to relief. *See Cheek v. United States,* 858 F.2d 1330, 1333 (8th Cir.1988). As such, his request for an evidentiary hearing is denied.

## VI.

### A.

■■ A defendant seeking to vacate a criminal conviction and/or sentence on the ground that he was denied effective assistance of counsel faces a heavy burden. To prevail, the defendant must show both that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of the *Strickland* test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be demonstrated that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. There is a "strong presumption" that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound [legal] strategy." *Kimmelman*

*v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (*citing Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052). To satisfy the second prong of *Strickland,* the defendant must establish that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Paramount to reviewing a court's consideration of any ineffective assistance of counsel claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. As discussed below, Gomez's complaints do not meet the rigid standards of *Strickland* and therefore he cannot prevail on or obtain § 2255 relief for the same.

### B.

Gomez first contends that he received ineffective assistance because his trial counsel failed to call several witnesses to testify and did not properly investigate the case. The record belies this contention.

■ There was no need, for example, to solicit testimony from Dr. Timothy Donelan, because a stipulation as to what Dr. Donelan would testify to, if called as a witness, was read to the jury by trial counsel. Dr. Donelan's findings and medical opinion, both of which were supportive of and consistent with Gomez's defense, were received into evidence and considered by the jury.

■ Gomez maintains that Darrell Touche, Cheryl Smith, Andrew Booker and Juan Padilla should have been called to testify to the fact that the back door to Muniz's house had already been broken before Gomez had arrived and to discredit the government's version of what happened. None of these witnesses, however, were present when Gomez was at Muniz's house on August 10, 1997 and thus had no knowledge of what transpired that evening or the condition of the door before and after he entered the house. Eyewitness testimony, corroborated by photographs of the scene, clearly established that Gomez forced his way through the back door, knocking out all or a portion of the door frame.

Amanda Flute and P.B., two other so-called "material" witnesses, were both subpoenaed by trial counsel. Flute's subpoena was returned unserved, with the notation "Not in state—no known address". P.B., a 17–year–old juvenile, was served (through his mother) and was interviewed by Dave Powers, a court-appointed private investigator, three days before trial. Powers' billing statement reflects that he telephoned counsel from Lower Brule and conferred with counsel shortly after talking to P.B.

■ Gomez also argues that Franklin Martinez, a police officer for the Lower Brule Police Department, Jason Rouillard, a tribal deputy, and Josephine Skunk, should have been subpoenaed and utilized as witnesses to rebut Muniz's testimony (and show she was lying about the events that occurred at her house on the night in question) to lend credibility to his defense. This Court has reviewed the telephone log and police reports, attached as Exhibits C and D to Gomez's supporting brief, and believes that any testimony offered by Martinez, Rouillard and Skunk concerning the matters referred to in these documents would have been inadmissible and more detrimental than helpful to him. The log was received into evidence at trial and the contents of the same served to buttress, not to detract from, the government's case. The information contained in the reports was, for the most part, irrelevant and prejudicial and would not have assisted Gomez in his defense.

On this record, the Court is unable to conclude that trial counsel's performance was deficient or that Gomez was prejudiced by trial counsel's conduct with respect to the investigation of the case and the calling of witnesses. *Delgado,* 162

F.3d at 982; *United States v. Flynn,* 87 F.3d 996, 1002 (8th Cir.1996); *English v. United States,* 998 F.2d 609, 613 (8th Cir.), *cert. denied,* 510 U.S. 1001, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993).

### C.

■ In addition, Gomez maintains that trial counsel failed to subpoena and/or call witnesses to show that Aranda had the beer bottle and was the aggressor and that Gomez was simply "protecting himself." The trial court prohibited the parties from presenting any evidence as to matters that occurred outside the situs of the burglary. Counsel therefore cannot be faulted or, more importantly, found to be ineffective for not calling witnesses to testify about matters that took place outside of Muniz's residence. Furthermore, counsel did offer eyewitness testimony (from Gomez) in support of Gomez's "self-defense" argument. Moreover, Martinez and Rouillard were not present in the house when the altercation between Gomez and Aranda occurred and therefore would not have been able to offer anything more (except perhaps hearsay statements made by Aranda and/or others) about the altercation than what Gomez himself testified to. As for Dr. Donelan, counsel solicited testimony from Gomez regarding the injuries he sustained during his encounter with Aranda in the house and offered evidence, via a stipulation that was read to the jury, of Gomez's injuries and Dr. Donelan's medical opinion regarding the cause of the same. In the end, the jury, after considering all of the evidence and weighing the credibility of the witnesses, found Gomez guilty of the burglary offense.

Given these facts, Gomez has no room to remonstrate about the reasonableness of trial counsel's conduct. Nor has he shown how he was prejudiced by counsel's conduct in a manner egregious enough to render the outcome of the case unreliable or fundamentally unfair. *Id.*

### D.

■ Gomez next asserts that his trial counsel failed to investigate and counter evidence, described in telephone logs and police reports and testified to at trial, of threats Gomez made to Muniz on August 10, 1997 following his arrest and release from jail. The record, however, indicates that counsel filed a motion in limine seeking to exclude any post-arrest threatening statements Gomez allegedly made to Muniz and that counsel, during an in-chambers hearing immediately before trial, challenged the validity and admissibility of such evidence. It is also readily apparent from the record that counsel cross examined Muniz about Gomez's alleged threatening statements, pointing out inconsistencies in what she claimed Gomez related to her in an effort to show that her testimony was based merely on her own objective feelings and not on what Gomez may have actually said. Against this backdrop, counsel's performance was neither subpar nor unreasonable. *Strickland,* 466 U.S. at 689–91, 104 S.Ct. 2052.

In any event, inasmuch as the Eighth Circuit decided that Gomez's attempts to influence Muniz through threats was probative on the question of guilt and properly admitted, *Gomez,* 165 F.3d at 654, Gomez was not prejudiced and therefore is precluded from obtaining post-conviction relief.

### E.

■ Gomez also claims that trial counsel was constitutionally inadequate because counsel failed to "file a sentencing memorandum and argue for a downward departure" of his sentence based on his "status as a deportable alien." The conduct complained of, however, does not rise to the level of ineffective assistance as contemplated by the Sixth Amendment.

Gomez has not shown that trial counsel's omissions were unreasonable. Nor has he shown that counsel's alleged nonfeasance undermined the proper functioning of the adversarial process or that counsel's inac-

tions produced an unjust result. Furthermore, in this Court's view, there is no reasonable probability that the sentencing outcome would have been different had trial counsel moved for the downward departure just mentioned. *See Blankenship,* 159 F.3d at 338–39; *see also, Drew v. United States,* 46 F.3d 823, 826–27 (8th Cir.), *cert. denied,* 516 U.S. 817, 116 S.Ct. 72, 133 L.Ed.2d 33 (1995). Given Gomez's perjurious testimony, his use of a dangerous weapon in connection with the offense, his threats to Muniz and his criminal history, it is very unlikely that such a departure would have been granted. In short, this case is not an "unusual" or "atypical" one that would warrant a departure under *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) and its progeny. *United States v. Saelee,* 123 F.3d 1024, 1025–26 (8th Cir.1997); *Ramirez–Espinoza v. United States,* 59 F.Supp.2d 1189, 1191–93 (D.Utah 1999), *appeal denied,* 208 F.3d 228, No. 99–4158, 2000 WL 21661 (10th Cir. Feb. 23, 2000).[2] Moreover, it should be pointed out that the trial court considered various mitigating factors and ultimately sentenced Gomez to the low end of the applicable guideline range.[3] For these reasons, Gomez's ineffectiveness claim must fail.[4]

### F.

Finally, Gomez argues that he was denied a fair trial because trial counsel failed to object to the prosecution asking questions about what transpired outside Muniz's house. Counsel originally moved to exclude any evidence of an altercation that occurred between Gomez and Aranda outside of the house but later withdrew the motion when the trial court ruled that anything that took place outside the residence was not relevant and would not be admitted.

Gomez, however, does not point to any specific instances where counsel should have objected nor does he support his argument with details or particulars. His argument, therefore, is subject to dismissal as being conclusory and lacking the sufficiency necessary to state a claim for relief. *Hollis v. United States,* 796 F.2d 1043, 1046 (8th Cir.) ("vague and conclusory allegations are not sufficient to state ground for relief under 28 U.S.C. § 2255"), *cert. denied,* 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986); *Voytik v. United States,* 778 F.2d 1306, 1308–10 (8th Cir. 1985) (no evidentiary hearing required where defendant failed to make specific, non-conclusory allegations); *Smith v. United States,* 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to dismissal); *see also, Smith v. United States,* 618 F.2d 507, 510 (8th Cir.1980) (wholly conclusory claims will not suffice to command an evidentiary hearing).

---

2. The Eighth Circuit's decision in *United States v. Cruz–Ochoa,* 85 F.3d 325, 326 (8th Cir.1996), holding that the district court had "discretion" to depart downward, is inapposite because Gomez, unlike the defendant in *Cruz–Ochoa,* did not plead guilty or agree to voluntary deportation.

3. Before pronouncing sentence, the trial court found:
   1. That Gomez was "competently represented" by his trial counsel;
   2. That "there was nothing [counsel] did in this trial that was in any way defective or improper"; and
   3. That counsel "did the best job he could with what was available to him as to the facts."

Sent. Tr. 3–4.

4. Gomez's claim, insofar as he raises one, that trial counsel was inadequate because counsel failed to review telephone records and police reports in resisting the trial court's imposition of two-level enhancements for possession of a dangerous weapon and obstruction of justice, is groundless. The record unequivocally shows that counsel objected to these enhancements and that the trial court found that the probation officer correctly applied both of them. Additionally, because as the Eighth Circuit determined that enhancements were properly applied, 165 F.3d at 654–55, Gomez was in no way prejudiced by counsel's actions or inactions.

Beyond this, Gomez has failed to show that trial counsel's omissions were not legitimate trial strategy or were otherwise unreasonable at the time so as to overcome the presumption that, under the circumstances, counsel's conduct fell within the wide range of reasonable professional assistance. Nor has Gomez articulated how he was prejudiced by counsel's alleged nonfeasance, or demonstrated that counsel's inactions had an adverse effect on his defense or the outcome of the case, or that they undermined the reliability of the result of the proceeding. Absent any showing of deficient performance and prejudice or a showing that the decision reached by the jury was unreliable, Gomez cannot succeed on his motion. Here, Gomez has failed to make the requisite showing, or come even close to doing so, and as such, his argument is without merit and provides him with no grounds for relief. *Strickland*, 466 U.S. at 700, 104 S.Ct. 2052.

## VII.

Gomez claims that his conviction and sentence should be vacated because the government violated Article 36 of the Vienna Convention on Consular Relations (Vienna Convention), April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, by failing to advise him of his rights to notify and communicate with the El Salvadoran consulate following his arrest.[5]

The Vienna Convention is a 79–article multilateral treaty to which both the United States and El Salvador are signatories. It was adopted by the United Nations in 1964 and ratified by the United States in 1969, thereby becoming the supreme law of the land. *See* U.S. Const. Art. VI, cl. 2; *see also, Breard v. Greene,* 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). The provisions of the treaty address a number of matters that require consular intervention or notification, including the death of a foreign national, the

appointment of a guardian or trustee for a national who is a minor, accidents involving a foreign airplane or boat, and the arrest or detention of a consular officer. Article 36 deals with what a member state must do when a foreign national is arrested or detained. It states, in pertinent part, as follows:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending state:

\* \* \* \* \* \*

b. If he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph. . . .

Moreover, the rights of consular notification and consultation are reinforced by federal regulations designed to implement these treaty obligations. Specifically, one set of regulations provides:

In every case in which a foreign national is arrested, the arresting officer shall inform the foreign national that his consul will be advised of his arrest unless he does not wish such notification to be given.

28 C.F.R. § 50.5(a)(1). Section 50.5 further requires an arresting agent to "inform the nearest U.S. Attorney of the arrest and of the arrested person's wishes regarding consular notification." *Id.* § 50.5(a)(2). The U.S. Attorney is then required to "notify the appropriate consul

---

5. Although not altogether clear from the record, it appears that Gomez is an El Salvado-

ran national.

except where he is informed that the foreign national does not desire such notification to be made." *Id.* § 50.5(a)(3).

This Court need not tarry over Gomez's Vienna Convention claim because he has procedurally defaulted the same. The Supreme Court in *Breard* observed:

> [I]t has been recognized in international law that, absent a clear and express statement to the contrary, procedural rules of the forum State govern the implementation of the treaty in that State. This proposition is embodied in the Vienna Convention itself, which provides that the rights expressed in the Convention "shall be exercised in conformity with the laws and regulations of the receiving State" provided that "said laws and regulations must enable full effect to be given to the purpose for which the rights accorded under this Article are intended." Article 36(2) [1970] 21 U.S.T. at 101.

523 U.S. at 375, 118 S.Ct. 1352.

■ It is a fundamental rule in this country that assertions of error in federal criminal proceedings must first be raised at trial or on direct appeal, absent a showing of both "cause" excusing the defendant's procedural default and "actual prejudice" resulting from the errors of which he complains, *United States v. Frady*, 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir.1992), *cert. denied*, 507 U.S. 945, 113 S.Ct. 1351, 122 L.Ed.2d 732 (1993) or alternatively, a

showing that the alleged errors would result in a "fundamental miscarriage of justice", *Schlup v. Delo*, 513 U.S. 298, 319–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir.1993).[6]

■ By not asserting his claim to the trial court or on appeal, Gomez failed to exercise his rights under the Vienna Convention in conformity with the laws of the United States and the District/State of South Dakota. He offers no "cause" for his procedural default and this Court can find none. Significantly, he does not argue that his appellate counsel[7] was ineffective or seek to use such an argument to establish "cause" for his procedural defect. *See Reid*, 976 F.2d at 448; *Ford v. United States*, 983 F.2d 897, 898–99 (8th Cir.1993). Furthermore, Gomez has failed to shoulder the burden of proving "actual prejudice" within the meaning of *Frady*[8] and its progeny so as to overcome his default. He has likewise failed to satisfy the *Schlup/Carrier* actual innocence standard.

Having failed to establish the requisite "cause" and "prejudice" to excuse his procedural default, and having failed to make a proper showing of actual innocence, this Court concludes that Gomez's claim is procedurally barred from review under § 2255. *Ramey*, 8 F.3d at 1314.

■ Yet, even if somehow Gomez's claim is reviewable, he still cannot prevail on the same because he has failed to dem-

---

**6.** The miscarriage-of-justice exception allows for the review of those "rare" and "extraordinary cases" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851 (*quoting Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). There appears to be a split among the circuits as to whether this exception applies in non-capital cases; the Eighth Circuit has concluded that the exception does not extend to non-capital cases, *see Embrey v. Hershberger*, 131 F.3d 739, 740–41 (8th Cir.1997) (*en banc*), *cert. denied*, 525 U.S. 828, 119 S.Ct. 78, 142 L.Ed.2d 61 (1998), while other circuits have held that it

does, *see id.* at 745–46; *see also*, 2 J. Liebman & R. Hertz, *Federal Habeas Practice & Procedure*, § 26.4, n. 17 (3d ed.1998).

**7.** Gomez was represented by different counsel on appeal than he had at trial and his sentencing.

**8.** Under *Frady*, the defendant must show not merely that the actions and conduct assailed "created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." 456 U.S. at 170, 102 S.Ct. 1584.

onstrate that any alleged violation of the Vienna Convention resulted in prejudice to him. Preliminarily, there is nothing in the language or operation of the Vienna Convention that indicates or even suggests Article 36 was intended to create an exclusionary type of rule with protections similar to those announced by the United States Supreme Court in the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), decided three years *after* the treaty was drafted. *United States v. Lombera–Camorlinga*, 206 F.3d 882, 883, 885–86 (9th Cir.2000); *United States v. Ore–Irawa*, 78 F.Supp.2d 610, 613–14 (E.D.Mich.1999). More importantly, Gomez has not shown that he was prejudiced by the government's alleged failure to comply with the dictates of Article 36. Courts which have considered the issue have generally held that a criminal defendant cannot obtain relief for a violation of the Vienna Convention without proof that the defendant sustained some kind of cognizable prejudice. *See Bennett v. U.S.*, Nos. 99 CIV. 4481 & 97 CR. 1029, 2000 WL 10213 (S.D.N.Y. Jan.5, 2000) (observing, in a § 2255 case, that "a violation of the Vienna Convention does not provide a defendant in a criminal case with the right to any relief unless the defendant can establish prejudice as a result of the violation"); *Ore–Irawo*, 78 F.Supp.2d at 613 (finding that the defendant failed to show actual prejudice under the Vienna Convention); *United States v. Miranda*, 65 F.Supp.2d 1002, 1006 (D.Minn.1999) (concluding that "no remedy is warranted unless the defendant can demonstrate that the Convention violation resulted in some form of prejudice"). *United States v. Alvarado–Torres*, 45 F.Supp. 2d 986, 990–91 (S.D.Cal.1999) (holding that failure on the part of customs agents to inform the defendant of her right

to contact Mexican consulate did not prejudice her); *see also*, *Breard*, 523 U.S. at 377, 118 S.Ct. 1352 (stating that even if the habeas petitioner's Vienna Convention claim had "been properly raised and proven, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial"); *Faulder v. Johnson*, 81 F.3d 515, 520 (5th Cir.) (rejecting the habeas petitioner's claim under the Vienna Convention on the ground that any assistance he may have obtained from his consulate would have had no effect on his defense), *cert. denied*, 519 U.S. 995, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996).

In the instant case, no showing of prejudice whatsoever has been made. Gomez does not explain how consultation with the El Salvadoran consulate would have changed the actions he took or altered the outcome of the case in any manner. Gomez's assertions of prejudice are speculative and trumped by the evidence of record and applicable precedent. Finally, had consular notification been given, Gomez would have been able to talk to someone who could do no more (and probably far less) to protect his rights than trial counsel. Therefore, because Gomez has failed to show that he was in any way prejudiced by the alleged Vienna Convention violation, his claim has no merit and must fail.[9]

### VIII.

Upon due consideration of the record and in light of applicable precedent, this Court believes that Gomez is not entitled to relief under § 2255 and that his motion, in its entirety, should be dismissed. Accordingly, based on the foregoing findings of fact and legal discussion and pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), it is hereby

---

**9.** It follows that any ineffective assistance contention, based on trial counsel's failure to seek relief for an alleged violation of the Vienna Convention, is similarly foreclosed because of Gomez's inability to satisfy the "deficient performance" and/or "prejudice" prongs of the *Strickland* test. *See Bennett*, 2000 WL 10213 at *2; *United States v. Arango*, No. 99CV3726, 1999 WL 1495422 at *3–4, (E.D.N.Y. Dec.29, 1999).

RECOMMENDED that Gomez's motion to vacate, set aside or correct sentence by a person in federal custody, Docket No. 104, be DENIED in all respects and that the case by DISMISSED with prejudice.